(151 App. Div. 324.)

PEOPLE ex rel. GREENBERG v. REID et al.

(Supreme Court, Appellate Division, Third Department. May 8, 1912.)

1. CONSTITUTIONAL LAW (§ 62*)—DENTAL EXAMINERS—DELEGATION OF POWER.
    It was competent for the Legislature to vest in the board of dental examiners the right to entertain complaints and hear charges against persons licensed to practice dentistry, and to report findings to the Board of Regents.

    [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 94–102; Dec. Dig. § 62.*]

2. PHYSICIANS AND SURGEONS (§ 11*)—LICENSE TO PRACTICE—FRAUD.
    Where relator permitted another person to impersonate him on examinations for license to practice dentistry, and adopted as his own examination papers of such person, on which he procured a license, such conduct was not only immoral and unprofessional, but constituted fraud in procuring the license within Public Health Law (Consol. Laws 1909, c. 45) § 170, providing that the Regents may suspend a person on the report of the board of dental examiners where he has been guilty of unprofessional or immoral conduct, etc.

    [Ed. Note.—For other cases, see Physicians and Surgeons, Cent. Dig. § 15; Dec. Dig. § 11.*]

3. PHYSICIANS AND SURGEONS (§ 11*)—DENTISTS—LICENSE—REVOCATION.
    Under Public Health Law (Consol. Laws 1909, c. 45) § 170, authorizing revocation of a dentist's license for unprofessional and immoral conduct, on the report of the board of dental examiners, where relator obtained his license by having another impersonate him in the examination, it was not necessary before his license should be revoked that he should be prosecuted criminally, either for false impersonation or perjury in making his affidavit, nor was it necessary that his guilt be established on a criminal trial, since jurisdiction to revoke his license existed with or without conviction of a criminal charge.

    [Ed. Note.—For other cases, see Physicians and Surgeons, Cent. Dig. § 15; Dec. Dig. § 11.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. PHYSICIANS AND SURGEONS (§ 11*)—DENTISTS' LICENSE—ESSENTIALS AND CHARACTER.

A license to practice dentistry essential to enable a person to follow such profession, while not strictly a personal or property right, partakes in a measure of the nature of both, and cannot be revoked without hearing.

[Ed. Note.—For other cases, see Physicians and Surgeons, Cent. Dig. § 15; Dec. Dig. § 11.*]

5. CONSTITUTIONAL LAW (§ 62*)—DENTISTS—LICENSE—REVOCATION—DELEGATION OF POWER.

The Legislature may give to the body having the right to grant a license to practice dentistry power to revoke the same for enumerated causes, and the proceedings for such revocation may be summary, and not subject to the strict rules of evidence, but the authority while so acting is quasi judicial in character, and accords the licensee due process of law in the revocation of his license.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 94–102; Dec. Dig. § 62.*]

6. PHYSICIANS AND SURGEONS (§ 11*)—LICENSE—REVOCATION—HEARING.

Public Health Law (Consol. Laws 1909, c. 45) §§ 195–198, create a state board of dental examiners to hold examinations and issue certificates on which successful candidates may be licensed to practice dentistry, by the State Board of Regents. Section 170 declares that, if any practitioner of dentistry be charged under oath before the board of examiners with unprofessional or immoral conduct, the board shall notify him to appear before it to answer the charges, and shall furnish him a copy thereof, and, on the report of the board that the accused has been guilty of unprofessional or immoral conduct, the Regents may suspend the person so charged from practice for a limited season, or may revoke his license. Held, that since the board has no power to revoke a license or to suspend the licensee from practice, but is bound to report its conclusions to the Regents, who in their discretion may suspend the licensee or revoke the license, a licensee against whom an adverse report on charges has been made to the Regents is entitled to a hearing before that body before his license can be legally revoked.

[Ed. Note.—For other cases, see Physicians and Surgeons, Cent. Dig. § 15; Dec. Dig. § 11.*]

Smith, P. J., and Kellogg, J., dissenting.

Certiorari by the People, on the relation of Max Greenberg, against Whitelaw Reid and others, composing the Board of Regents of the University of the State of New York, to review proceedings on revocation of a license issued to relator to practice dentistry. Revocation annulled, and proceedings remitted to the board for hearing.

See, also, 133 N. Y. Supp. 1139.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, and BETTS, JJ.

I. N. Jacobson, for relator.
Frank B. Gilbert, for respondents.

HOUGHTON, J. In 1907 a license to practice dentistry was issued by the Board of Regents of the University of the State of New York to the relator. Shortly after receiving such license, the relator registered for practice in the county of New York, and filed with the clerk of that county an affidavit stating, amongst other things, that

before the receiving of such license he had complied with all the preliminary requirements of law as to study and the passing of examinations. The relator had practiced his profession about three years when charges were preferred against him to the board of dental examiners of the state, alleging that he had procured his license to practice dentistry by fraud, and that his affidavit that he had passed the preliminary examinations was false, in that he had procured another to personate him on such examinations, and had adopted as his own the examination papers of such other person. A copy of the charges and notice of the time and place of hearing before the board of dental examiners were served upon the relator and he appeared in person and by counsel, and made certain preliminary objections which were overruled, and testimony was taken, argument had, and briefs submitted. After consideration the board of dental examiners found the charges true, and transmitted to the Board of Regents all the proceedings had before them, with the recommendation that the license of the relator be revoked. The relator asked for a hearing upon this report and recommendation in person or by counsel before the Board of Regents, which was refused. Without any hearing and after denying his request to be heard, the Board of Regents revoked relator's license, and directed it to be canceled. We would have no hesitancy in confirming the determination of the Board of Regents except for the practice pursued by that board in refusing a hearing to the relator.

[1] It was competent for the Legislature to vest in the board of dental examiners the right to entertain complaints and hear proof, and the charges were sufficiently pertinent and specific, and the relator's preliminary objections were properly overruled.

[2] The practicing of fraud in the procuring of a license to practice a profession is "immoral" and "unprofessional" as that term is used in the statute and is ample ground for its revocation, and the procuring of another to impersonate the applicant in examinations is fraud of the grossest character.

[3] It was not necessary that the relator should be prosecuted criminally either for false impersonation or perjury in making his affidavit, and his guilt established upon a criminal trial before his license could be revoked by the proper authorities. Power to revoke his license existed with or without conviction of a criminal charge. Matter of Smith, 10 Wend. 449. Nor was the introduction of the testimony given in the divorce action in view of the character of the trial and proceeding such error as to require reversal of the determination if it were otherwise legal.

Whether or not the relator's rights were so fully preserved by the hearing which was had before the board of dental examiners, of which he had notice and opportunity to be heard, that the Board of Regents, which alone had the power of revoking his license, was justified in refusing to hear him further, is a question which has given us much trouble. If the relator upon a proceeding to revoke his license was entitled to a trial as that term is understood in the law, a refusal to give him an opportunity to be heard would be wholly unjustified and

clearly nullify any determination which might be made. The difficulty arises in determining the character of the proceeding to revoke a license granted by the public authorities to an individual to practice a prescribed profession. One must expend much time and money to prepare himself for the practice of medicine, dentistry, and the like. It has long been the law that, however great a man's attainments may be, he must obtain a license from the duly constituted authorities of the state before he can practice such profession and the propriety and necessity of such a law is not disputed or challenged.

[4] While such a license when once obtained is not, strictly speaking, either a personal or a property right, it partakes in a measure of the nature of both. Notwithstanding the value of such license to the holder, the authorities are unanimous that it can be taken away from him for misconduct or fraud in its procurement, through a tribunal other than a duly constituted court, and that his constitutional rights are not violated by compelling him to submit to the determination of such inferior tribunal. All of the authorities, however, respecting licensed physicians and dentists, to which we have been referred or which, after exhaustive search, we have been able to find, hold that the licensee should be given notice of the presentation of charges against him and accorded an opportunity to be heard concerning them.

[5] The Legislature may give to the body having the right to grant a license the power, for causes which it may enumerate, to revoke a license which it has granted. The proceeding for such revocation may be summary and not subject to the strict rules of evidence; but the board while acting in such capacity is quasi judicial in character, and so meets the constitutional requirement, if there be any necessity therefor, of according the licensee due process of law in the revocation of his license. People v. Apfelbaum, 251 Ill. 18, 95 N. E. 995; Meffert v. Medical Board, 66 Kan. 710, 72 Pac. 247, 1 L. R. A. (N. S.) 811, affirmed, 195 U. S. 625, 25 Sup. Ct. 790, 49 L. Ed. 350; State Medical Board v. McCrary, 95 Ark. 511, 130 S. W. 544, 30 L. R. A. (N. S.) 783, Ann. Cas. 1912A, 631; State Board of Health v. Roy, 22 R. I. 538, 48 Atl. 802. The licensee, however, must have notice and be given an opportunity to be heard. People v. McCoy, 125 Ill. 289, 17 N. E. 786. If the statute be silent respecting the procedure, that fact will not warrant the construction that the investigation should be made ex parte or without opportunity to be heard. State v. State Medical Examining Board, 32 Minn. 324, 20 N. W. 238, 50 Am. Rep. 575. In the case of the removal of a teacher at Phillips Academy bearing some analogy to the question under consideration, it was held that he was entitled to notice and a hearing, not only before the board of trustees of the academy, but before the board of visitors which had the ultimate power of removal. In re Murdock, Appellant, 7 Pick. (Mass.) 303. Where there can be a removal of a municipal employé only for cause, a notice of the charges and opportunity to be heard is implied. People ex rel. Peck v. Commissioners of Brooklyn, 106 N. Y. 64, 12 N. E. 641.

[6] This right to a notice and a hearing by all classes of persons

to whom licenses to follow various callings may be granted, is recognized by the Legislature, and is provided for in one way or another by the Public Health Law, permitting the issuing and revocation of licenses by particular boards. With respect to dentists, there is provided a state board of dental examiners who are required to hold stated examinations for the examination of persons desiring to practice dentistry, and, upon the certificate of such examiners that the candidate has successfully passed the examination and is competent to practice dentistry, the State Board of Regents is required to issue such license to him. Public Health Law (Laws 1909, c. 49 [Consol. Laws 1909, c. 45]) §§ 195–198. If any practitioner of dentistry be charged under oath before the board of examiners with unprofessional or immoral conduct, or with gross ignorance or inefficiency in his profession, such board is required to notify him to appear before it at an appointed time and place, with counsel, if he so desires, to answer said charges and to furnish him a copy of the same. After such hearing shall be had, it is provided that:

"Upon the report of the board that the accused has been guilty of unprofessional or immoral conduct, or that he is grossly ignorant or inefficient in his profession, the regents may suspend the person so charged from practice of dentistry for a limited season or may revoke his license."

The provision with respect to physicians is that, upon the report of the state board of medical examiners that an applicant has passed the required examination, the Regents shall issue to him a license to practice medicine. In proceedings for the revocation of such license charges are to be filed with the executive officer of the Board of Regents and a copy thereof with the secretary of the board of medical examiners. Thereupon the board of medical examiners are required to designate a committee of three to hear and determine the same. At least 10 days' notice must be given the accused of the time and place of hearing, and a copy of the charges must be served upon him. After the trial, if the committee shall unanimously find that said charges are sustained and shall recommend that the license of the accused be revoked or his registration be annulled, the Board of Regents may thereupon "in their discretion revoke said license or annul said registration or do both." Public Health Law, § 170. The state board of pharmacy has the power to revoke licenses granted to pharmacists, after giving the licensee reasonable notice and an opportunity to be heard, without any report to the Board of Regents. Id. § 239. Certificates to nurses may be granted by the board of examiners of nurses appointed by the Regents, but only the Regents themselves may revoke such certificate after written notice to the holder thereof and hearing thereon. Id. § 251. The revocation of a certificate permitting the practice of optometry can be made only after at least 10 days' notice of the time and place of hearing, and the practice with respect to revocation upon report to the Regents is the same as in that of physicians. Id. § 306. The earliest law with respect to the revocation of licenses of physicians is found in the Revised Statutes of 1830. Part 1, c. 14, tit. 7. It was there provided that, when any charges were preferred to any county medical society

against a physician, 10 days' published notice should be given of the time and place of hearing before such society, and its action thereon should be transmitted to the district attorney of the county, who should immediately serve a copy upon the accused, together with at least 14 days' notice of the time and place of hearing by the judges of the court of common pleas, of the county, before whom witnesses should be sworn and a trial had, and by whom judgment of expulsion from the society and a suspension of the right to practice could be rendered.

We have thus adverted to the statutes, not only for the purpose of showing their provisions for notice and hearing, but for the purpose of pointing out what we deem to be defects in the scheme of according complete right to a hearing to the licensee. The board of dental examiners has no right to grant a license to practice dentistry, nor, upon its recommendation that a license be granted, does the Board of Regents have any power to withhold a license. The statute is that upon such recommendation a license must be granted. Nor does the board of dental examiners have any power to revoke a license. On the contrary, the statute gives it only the power to report to the Board of Regents its conclusion with respect to the accused. The Board of Regents is not bound to follow such recommendation because the statute expressly says that upon receiving a report that the accused has been guilty of unprofessional or immoral conduct, or that he is grossly ignorant or inefficient in his profession, it "may suspend the person so charged from practice for a limited season or it may revoke his license." If the statute prescribed that the Board of Regents must follow the recommendation of the board of dental examiners and revoke the license if the examiners so recommended, it could very well be said that the duty of the Board of Regents was merely ministerial, and that the licensee was not entitled to notice, and that the accused was not deprived of any right in being refused permission to appear before it. But the statute is that the Board of Regents may wholly revoke or suspend the accused from practice for a limited time. Upon the question as to what the Board of Regents shall do on the coming in of the report, we think the accused licensee has the right to appear and be heard in person or by counsel. The Legislature had the right to say that the complete trial so far as the introduction of evidence and the submission of proofs was concerned should be held before the board of dental examiners, and, having done so, the accused would not be entitled to produce any further evidence before the Board of Regents; but, as to what judgment should be rendered upon the evidence as taken, it would seem clear that the licensee was entitled to be heard. This is true, also, with respect to physicians and all other licensees where the law prescribes that the trial shall be had before another body other than the Board of Regents which grants and revokes the license.

It was held in People ex rel. De Vries v. Hamilton, 84 App. Div. 369, 82 N. Y. Supp. 884, that a deputy county clerk might hear charges against an employé in the clerk's office, and, if such charges were sustained, dismiss him; but he could not, in the absence of ex-

press statutory authority, conduct the trial, and thereafter turn the evidence taken by him over to the county clerk, and leave to the latter the duty to pass upon its sufficiency in the absence of the accused employé and without notice to him or without giving him any opportunity to be heard before the clerk himself.

The question involved does not appear to have previously arisen, and there is no authority for or against the proposition that the Board of Regents has or has not the right to deny a hearing on passing judgment upon the report of the examining board. Such judgment cannot be purely ministerial, for it rests on discretion, and may be one of absolute revocation or mere suspension of the right to practice for a definite period. The function of the Board of Regents is therefore more than ministerial, and is quasi judicial in character.

We are of opinion that the refusal of the Board of Regents to allow the relator to be heard on the coming in of the report was unauthorized, and denied to him a privilege which the law accorded to him. We are aware that in the city of New York charges against members of the police force are heard before a deputy police commissioner and ultimate judgment passed by the police commissioner himself, and that the determination of the deputy as to guilt, as is held in People ex rel. Garvey v. Partridge, 180 N. Y. 237, 73 N. E. 4, need not even be in writing. It does not appear in any of the adjudicated cases that the accused was denied a hearing by the police commissioner when sentence was ultimately passed.

Nor are we unmindful of the decision in People ex rel. Lodes v. Department of Health, 189 N. Y. 187, 82 N. E. 187, 13 L. R. A. (N. S.) 894, holding that a permit to sell milk, granted by the board of health of the city of New York, may be revoked without any notice to or hearing by the licensee. The revocation of the license of a practitioner of medicine or dentistry is quite a different matter from the ordinary action of the board of health of a particular locality where immediate and summary action is necessary to the welfare of the community.

Our conclusion is that the determination of the Board of Regents must be annulled and the proceeding remitted to such board to the end that a hearing on the evidence taken before the board of examiners may be accorded to the relator, without costs, however, of this appeal. All concur, except SMITH, P. J., and KELLOGG, J., dissenting.