ROBERT E. CONNER, JR., Respondent, v ELAINE CONNER, Appellant.

Second Department, October 31, 1983

APPEARANCES OF COUNSEL

*Arnold B. Firestone* for appellant.

*Smith, Panish & Shapiro* (*Harry Shapiro* of counsel), for respondent.

**OPINION OF THE COURT**

O'CONNOR, J.

Defendant wife appeals from an order denying her an expert's fee to determine the value of the education of plaintiff husband, who was awarded a Master's degree in business administration by Harvard University. It is her argument that the academic degree is a "marital asset", indeed, virtually the parties' only asset, and that it has "economic potential" susceptible of calculation and proof by an expert. Her proposed retainer agreement with the expert, annexed to her motion, speaks of determining plaintiff husband's net income and net worth, "including the value of his Masters of Business Administration degree", and of "[a]ssist[ing] in the structuring of the divorce settlement to achieve maximum tax benefits" for defendant wife.

Plaintiff husband and the nisi prius court, relying on the Fourth Department's recent decision in *Lesman v Lesman* (88 AD2d 153, app dsmd 57 NY2d 956), concluded that no fee should be awarded for such an evaluation because, first, a degree or license is not property subject to equitable distribution in a judgment dissolving a marriage, and second, defendant wife had made no contribution to his earning the degree sufficient to warrant restitution.

I agree with the Fourth Department's conclusion that an academic degree is not property susceptible of distribution pursuant to part B of section 236 of the Domestic Relations Law. I conclude, however, that the jural nature of an academic degree is essentially irrelevant to the operation of the new law in allocating the economic incidents of the divorce judgment between property settlement and alimony (now maintenance), apart from significant considerations such as taxation and creditors' rights. I further conclude that Special Term misconstrued the nature of spousal contributions recognized under the new law. I therefore analyze these issues at some length because the value report and tax advice which defendant wife receives at the plaintiff husband's expense will only be useful if formulated under premises compatible with the new law.

THE FACTS

The parties were married in West Germany in 1971. Plaintiff husband had just been discharged from the United States Army with the rank of captain, and defendant wife was working as a full-time teacher. Defendant wife, who holds a Master's degree in education, was unemployed for a few months upon their return to the United States, but she eventually commenced part-time employment in the education field. From November, 1973 to June, 1974 she resumed full-time employment as a teacher, and from November, 1974 to June, 1975 she worked as a substitute teacher. After their second child was born in August, 1975, she no longer engaged in any remunerative employment.

During the same period, plaintiff husband pursued a Bachelor's degree in the University of California at Santa Barbara from 1971 to 1973, while working at part-time

school year jobs and full-time summer positions. Two years of study from September, 1973 to June, 1975 earned him a Master's degree in public administration from Harvard University, and two more years, from September, 1975 to June, 1977, were spent in obtaining the Master's degree in business administration in issue here.

Defendant wife points out that during four of the six years following their marriage, plaintiff husband was a full-time student, working only sporadically while she worked as a teacher and cared for their son until the birth of their second child, when she was "required" to remain at home and care for the family. Plaintiff husband points out that during the entire time he was enrolled in the Harvard business administration program, he was the sole financial support of their household, working full time the summer of 1976 and part time thereafter as a consultant. Thereafter he worked for several firms as an investment adviser.

At the time of defendant wife's application for an expert's fee, plaintiff husband was earning in excess of $55,000 yearly. Defendant wife, who had not attempted to obtain employment since September, 1979, admitted in a prior affidavit that she was capable of earning $17,000 yearly as a teacher.

The parties own no real property or other assets of substantial value apart from a 1971 and a 1977 automobile, $2,000 in a checking account and $3,000 in a savings account. Hence defendant wife claims that plaintiff husband's business degree represents "virtually the sole marital asset". Plaintiff husband argues that his business degree was "a cumulative product of *my* hard work over many years", and objected to its analysis as property susceptible to division in the nature of an interest in his future earnings.

Defendant wife moved, with the proposed retainer agreement annexed, for an order directing plaintiff husband to pay directly to her expert the sum of $750, *inter alia,* to evaluate: (1) the marital property of the parties; (2) the education of the plaintiff husband, including his business degree; (3) the economic loss to defendant wife in sacrificing her career as a school teacher in order to become a homemaker and mother; (4) the present respective finan-

cial positions of the parties; and (5) the future financial circumstances of the parties.

Ruling that the education of the plaintiff husband, including his business degree, was not an asset susceptible to distribution as marital property, Special Term granted the application only to the extent of awarding an expert's fee of $500 (1) to "evaluate all other marital property acquired by the parties during the marriage," and (2) "to place a value on her homemaker services, if any". The court reasoned: "The Legislature has now provided for Equitable Distribution of 'property'. It has not provided for equitable distribution of future earnings, and the courts, as noted in *Lesman,* supra, should not do so either by distorting the concept of property or by applying our own notions of equity * * * In fixing the amount of maintenance, and in distributing the marital property, the courts must consider the contributions made by a wife to the husband's 'career or career potential * * * Here, it appears that the wife did not contribute *monetary* support during the period of time that it took for the husband to attain the professional degree which enabled him to be where he is today financially. The wife, however, *may* have made contributions in the role of a homemaker and mother which enabled her husband to attain his degree and employment" (emphasis supplied).

DISCUSSION: ACADEMIC DEGREE AS MARITAL PROPERTY

The Fourth Department in *Lesman v Lesman* (88 AD2d 153, *supra*) ruled that a medical degree and a license to practice medicine earned during marriage were not marital property within the meaning of the Equitable Distribution Law. Upon a review of decisions on the issue in other jurisdictions, the court noted that the majority had held that such items are not property subject to distribution upon divorce, and recapitulated the various approaches taken by different courts in analyzing the issue. The court concluded (*Lesman v Lesman, supra,* p 157): "By classifying an education or degree as property, the courts, in reality, treat as property the future enhanced earning capacity that may result from the education. Enhanced earning capacity is not property. It is not vested; it is only an uncertain expectancy, for it is dependent upon the future success and efforts of the degree holder".

Defendant wife attacks this analysis as inequitable on the ground that a spouse should be compensated for the contributions made during the marriage to the education of the other spouse. These contributions, she argues, were made with the reasonable expectation that they would inure to the benefit of both parties to the marriage in the future. To prohibit this result, then, would deny such spouse the benefits of the marital partnership.

Defendant wife points out that the distinction made in *Lesman v Lesman* (*supra*) between property and future services has been sharply criticized as an unnecessary and confusing exploration into "the semantical bog of defining 'property'" (Foster and Freed, Virtue Is Not the Only Reward for Spousal Contributions, NYLJ, Jan. 17, 1983, p 1, col 1). Foster and Freed note that New York's Equitable Distribution Law, unlike those in other States, contains specific provisions (discussed below) relevant to what they call the "student-spouse-working-spouse syndrome", which recognize the contributions of the working spouse and entrust the courts with the question of which *form* such recognition should take: an award of maintenance, or distribution of property in kind or by distributive award, or both (Domestic Relations Law, § 236, part B, subd 5, par d, cl [6]; par e; subd 6, par a, cl [8]).

Nevertheless, the distinction between a property settlement (whether outright division and transfer of specific property or creation of a debt in the form of a distributive award) and maintenance (an obligation of support) cannot be so easily disregarded. Judicial manipulation of the property settlement and maintenance obligation is restricted because of the significant consequences that flow from other laws (see Foster and Freed, Virtue Is Not the Only Reward for Spousal Contributions, NYLJ, Jan. 17, 1983, p 1, col 1, p 3, col 1, nn [17], [18]).

Of particular significance in the case under review, for instance, are the tax consequences flowing from the proposed characterization of plaintiff husband's business degree as marital property. The proposed retainer agreement with defendant wife's expert properly includes advice on such consequences as an integral part of his services. Indeed, the nisi prius court is required by the Equitable

Distribution Law to take tax consequences into consideration, and to disclose its reasoning for the result on the record (Domestic Relations Law, § 236, part B, subd 5, par g; subd 6, par a, cl [7]; par b). Furthermore, under the law's provisions for property settlements, a distributive award is defined to exclude "payments which are treated as ordinary income to the recipient under the provisions of the United States Internal Revenue Code" (Domestic Relations Law, § 236, part B, subd 1, par b). The definitions of property settlement and maintenance are governed for tax purposes by Federal law (see *Bardwell v Commissioner of Internal Revenue,* 318 F2d 786).

In the case under review, defendant wife clearly could not ask, as part of a property settlement, for partition of plaintiff husband's business degree as a *res* susceptible of actual or constructive possession or transfer.[1] Instead, her

---

1. It is the reification of plaintiff husband's academic degree that underlies defendant wife's pretended claim to his enhanced earnings potential in the form of property rather than a mere obligation. An academic degree (or a professional license as in *Lesman v Lesman* [88 AD2d 153]), is a nonassignable, personal privilege conferred upon an individual by operation of State law (see Education Law, §§ 224, 6506, 6512; Judiciary Law, §§ 90, 478, 484; see, also, Kocourek, The Hohfeld System of Fundamental Legal Concepts, 15 Ill L Rev 24, 32). Such a privilege authorizes the holder to engage in acts forbidden to others (see *People ex rel. Lodes v Department of Health,* 189 NY 187, 191-192), but lacks sufficient public dimension to permit characterization of it as an office or franchise (see *Trustees of Freeholders & Commonalty v Jessup,* 162 NY 122, 126; *People ex rel. Kelly v Common Council,* 77 NY 503, 507-508; *Matter of Oaths to be Taken by Attorneys & Counsellors,* 20 Johns 492). It is true that, by its nature, such a privilege has one element in common with property. The individual holds his privilege exclusively as against all the world (see Maitland, Equity [2d ed], lect IV, pp 46-47; lect IX, pp 107, 112-114; Posner, Economic Analysis of Law [2d ed], § 3.1, p 28; § 3.7, p 49; 1 Callmann, Unfair Competition Trademarks and Monopolies [4th ed], § 1.15; 5 Pound, Jurisprudence, § 133, p 128; cf. Nicholas, Introduction to Roman Law [1962 ed], pp 99-105). But *any* legal exclusion or regulation of competition for a particular resource creates property in this basic sense, whether constituted in such familiar tangible form as the ownership of land and chattels (see 2 Blackstone's Commentaries [Dawsons ed], pp 4, 7), or in such diverse intangible forms as the patented application or copyrighted expression of ideas or protected priority in the dissemination of information (see *International News Serv. v Associated Press,* 248 US 215) or as minimum wage, collective bargaining, fair trade or business organization laws (see Jaffe, Law Making by Private Groups, 51 Harv L Rev 201, 214-218, 220). The privilege itself is not a resource to which defendant wife may make a legally cognizable claim. The privilege is alienable only by the granting authority, and it can be conferred upon a claimant such as defendant wife only if she complies with the requirements fixed by that authority — by being graduated from the Harvard Business School. The resource actually sought to be controlled by defendant wife to the exclusion of all others, including plaintiff husband, is a percentage of his future labors that utilize the nonassignable privilege. In short, the privilege has no pecuniary value susceptible of ascertainment by defendant wife's expert apart from such labor. Labor, however, is merely the use by plaintiff husband of his own best asset, his chief capital — the property of his own person (see Tribe, American Constitutional Law, § 15-14, p 948, citing *Lynch v Household Fin. Corp.,* 405 US 538, 552 [opn by STEWART, J.]; 1 Callmann, Unfair Competition Trademarks and Monopolies [4th ed], § 1.23, n 11; 3 Pound, Jurisprudence, § 83, p 33; § 84, pp 69, 86; § 87, pp 155-157; cf. Savigny, System of

motion papers, which demand an evaluation of the degree in pecuniary terms, obviously indicate an intention on her part to request a distributive award, apparently as a sum certain (payable in a lump or installments), representing a percentage share of the present value of the income plaintiff husband is to earn for the rest of his life by exercising to the fullest the privileges conferred on him by the award of the degree. The difficulty with employing a distributive award to obtain a share in the expected fruits of plaintiff husband's future labors is that, at root, it is indistinguishable from an award of maintenance, although, as a consequence, it constitutes a judgment debt rather than a mere support obligation fixed by a matrimonial judgment. To escape characterization of such a distributive award as maintenance and hence as ordinary income, defendant wife would have to show that the award represented a liquidation of her marital property rights, not her support rights, under the peculiar provisions of section 71 of the Internal Revenue Code (US Code, tit 26) (see *Lambros v Commissioner of Internal Revenue Serv.,* 459 F2d 69). Generally, however, a person's future earnings capacity is not characterized as property under the code (see, e.g., *United States v Woolsey,* 326 F2d 287; *Bisbee-Baldwin Corp. v Tomlinson,* 320 F2d 929; *United States v Eidson,* 310 F2d 111, mod on other grounds 312 F2d 744).

Further, as to creditors' and testamentary rights, nothing in the new law or in its legislative history suggests that maintenance, unlike a property settlement, will be

the Modern Roman Law [Holloway translation], pp 272-276). Even a total revocation of such a privilege by public authority is analyzed as mere regulation rather than appropriation of property under the due process and just compensation clauses of the Fifth and Fourteenth Amendments (see *Board of Regents v Roth,* 408 US 564, 571-572; *People ex rel. Levy Dairy Co. v Wilson,* 179 App Div 416, 417; *People ex rel. Greenberg v Reid,* 151 App Div 324, 326-327; Ackerman, Private Property and the Constitution, p 165, n 115). Nothing in the Equitable Distribution Law or its legislative history suggests an intention by the Legislature to vest a proprietary right in defendant wife to plaintiff husband's very person as if he were a syndicated thoroughbred. To the contrary, the new law implicitly reaffirms his exclusive proprietary right to his own person by declaring, without exception for lost wages, that all awards for personal injuries are deemed separate rather than marital property (Domestic Relations Law, § 236, part B, subd 1, par d, cl [2]). Hence there is a real distinction between being obliged to pay maintenance or transfer marital property and being owned in part by a former spouse. So subtle a distinction rarely becomes important except in a case such as this, in which there is strong temptation to substitute for a careful evaluation of the statutory factors relevant to maintenance and equitable distribution of marital property a mechanical analysis that simplistically demarcates plaintiff husband's obligation to share the fruits of his future labors by a fictional partition of the *res* of his academic degree.

any more susceptible than alimony to assignment, encumbrance or bequest (see *Weintraub v Weintraub,* 302 NY 104; *Romaine v Chauncey,* 129 NY 566, 573-575; *Baskin & Co. v Howe,* 225 App Div 553). Also unlike property, maintenance owed a spouse in bankruptcy is exempted from the bankrupt's estate because it is analogized to future earnings (see US Code, tit 11, § 522, subd [d], par [10], cl [D]; HR Rep No. 95-595, 95th Cong, 1st Sess, p 362 [reprinted at US Code Ann, tit 11, § 522, p 399]); and it is not discharged as a debt owed by an obligor spouse in bankruptcy (see US Code, tit 11, § 523, subd [a], par [5]). Federal law, rather than State law, will characterize an obligation as maintenance or property for this purpose (see HR Rep No. 95-595, 95th Cong, 1st Sess, p 363 [reprinted at US Code Ann, tit 11, § 523, p 508]). Further still, unlike a property settlement, maintenance is subject to modification after judgment because of changed circumstances such as financial hardship, remarriage or death (see Domestic Relations Law, § 236, part B, subd 1, par a; subd 9, par b).

Despite the flexibility of the new law fixing the economic incidents of marital dissolution, in view of the significant practical consequences, e.g., tax consequences, that flow from the operation of the Equitable Distribution Law, the proprietary nature of the relief awarded in the working-spouse-student-spouse situation must be ascertained and appreciated. The expert, in evaluating the financial circumstances of the parties, must avoid misleading assumptions about the proprietary nature of plaintiff husband's business degree and the tax consequences of defendant wife's distributive and maintenance awards.

DISCUSSION: RECOGNITION OF SPOUSAL CONTRIBUTIONS

Having deducted $250 from the requested $750 in expert's fees based on its exclusion of the plaintiff husband's business degree from marital property, Special Term approved the award of $500 in expert fees to determine the value, *inter alia,* of defendant wife's "homemaker services, if any". The court's decision noted that she "may have made contributions" during their marriage, which "enabled her husband to attain his degree and employment". In so ruling, the court implicitly denigrated her contributions to the marriage without any evidence in this record,

apparently on the assumption that only *certain* of her contributions are recognized under the Equitable Distribution Law. Curiously, defendant wife herself likewise surrenders the high ground by asking that the expert be paid to evaluate her claim to reimbursement for her lost career opportunity as a modestly paid teacher, an obviously less ambitious claim than an outright demand that her marital contributions as a homemaker per se are by virtue of the new law presumed to be equal to those of her high-salaried investment adviser spouse, at least in the absence of evidence to the contrary (see Posner, Economic Analysis of Law [2d ed], § 5.3, pp 108-109; § 6.13, pp 145-146). Plaintiff husband, of course, takes the extreme view that his business degree and his earnings are the product of his sole effort.

None of the positions taken by the parties or Special Term is correct. They completely ignore the new law's operating premise that the dissolution of a marriage in this State is to be regarded as the winding up of a partnership, and also ignore the new law's explicit nonpartnership provisions for rehabilitating or supporting a dependent spouse, i.e., one whose marketable skills, and therefore independence, have been sacrificed during the course of the marriage for the role of a homemaker.

According to the Assembly memorandum in support of the new law (11C Zett-Kaufman-Kraut, NY Civ Prac, Appendix B, p 8): *"The basic premise for the marital property and alimony (now maintenance) reforms of this legislation (§ 236) is that modern marriage should be viewed as a partnership of co-equals.* Upon the dissolution of a marriage there should be an equitable distribution of all family assets accumulated during the marriage and maintenance should rest on the economic basis of reasonable needs and the ability to pay. *From this point of view, the contributions of each partner to the marriage should ordinarily be regarded as equal, and there should be an equal division of family assets, unless such a division would be inequitable under the circumstances of the particular case"* (emphasis supplied).[2]

---

2. For the record, it should be noted that both the first and second italicized portions are taken directly from page 8 of Appendix B of 11 C Zett-Kaufman-Kraut, New York Civil Practice. However, a revised memorandum appears on pages 129-130 of the 1980

Furthermore, as to the continuing obligation of one marital "partner" toward another *after* dissolution of their marital partnership, that memorandum stated (p 8): *"The objective of the maintenance provision is to award the recipient spouse an opportunity to achieve independence.* However, in marriages of long duration, or where the former spouse is out of the labor market and lacks sufficient resources, or has sacrificed her business or professional career to serve as a parent and a homemaker, 'maintenance' on a permanent basis may be necessary. In recognition of these facts, the non-monetary contribution of a spouse is a factor for consideration" (emphasis supplied).

The partnership analogy has been adopted by the Governor (Governor's memorandum of approval, McKinney's Session Laws of NY, 1980, p 1863), the courts (see, e.g., *Forcucci v Forcucci,* 83 AD2d 169, 171) and the commentators (see, e.g., 2 Foster-Freed, Law and the Family — New York, § 33:4-A, pp 837-838 [1983 Cum Supp]; Scheinkman, 1982 Practice Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law, C236B:4, pp 63, 64, 1982-1983 Pocket Part).

Part of the confusion arising from defendant wife's application for an evaluation of her husband's business degree as marital property arises from the parties' failure to appreciate the two distinct theories incorporated within the new law: partnership and rehabilitation.

Absent agreement to the contrary, under the Partnership Law the rule is that, after repayment of whatever property he brought into the partnership, i.e., contributions of capital or advances, a partner is entitled to share equally in the profits and surplus earned through the efforts of all partners with such contributions (Partnership Law, § 40, subd 1; § 71). The distribution is equal and final. Rehabilitation is unavailable. No partner is entitled to remuneration for services rendered (Partnership Law, § 40, subd 6; *Rosen Trust v Rosen,* 53 AD2d 342, affd 43 NY2d 693; *Hart v Myers,* 59 Hun 420, affd 128 NY 578;

New York Legislative Annual, which, while reaffirming the partnership principle, deletes the words "of co-equals" in the first italicized portion. This version was not published in Zett-Kaufman-Kraut.

Sugarman, Partnership [4th ed], § 73, p 100). A partner, therefore, has no claim to the specific performance of services of another partner, nor to damages for their loss, even though he may have sacrificed some of his more lucrative skills in order to advance the interests of the partnership (e.g., by performing administrative chores), thus enabling the other partner to enhance his marketable skills. Nor does a partner have a claim to another partner's future labors on the theory that such constitutes good will in which all partners must share upon dissolution.[3] In contrast with the stockholder in a corporation, therefore, a partner shares equally in the profits of his partnership no matter what his proportionate share of capital, advances and personal services. His interest in the income-producing asset of his own person is not, like stock, transferable as property.

The provisions of the Equitable Distribution Law, which are also subject to contrary agreement by the parties (Domestic Relations Law, § 236, part B, subd 3), do not expressly state what specific theories guide their operation. Nevertheless, in view of the definition of marital property and the legislative history, those provisions appear to function coherently only under the partnership analogy, with the notable exception of the maintenance provision.

Marital property is defined as "all property acquired by either or both spouses during the marriage and before the execution of a separation agreement or the commencement of a matrimonial action, regardless of the form in which title is held" (Domestic Relations Law, § 236, part B, subd 1, par c). Consistent with the law of partnership with respect to capital, advances and personal services, the definition of marital property also includes "the increase in value of separate property * * * to the extent that such appreciation is due in part to the contributions or efforts of

---

**3.** A partner's name and good will are assets under some circumstances, but even so they do not include the ability, skill, experience, business acquaintances, clientele or other personal characteristics of that partner (see *Spaulding v Benenati,* 57 NY2d 418; *Bailly v Betti,* 241 NY 22, 26; Sugarman, Partnership [4th ed], § 71, p 97). Hence in evaluating good will there must be a deduction for that portion attributable to the parting partner's future services (see Graham and Katz, Accounting in Law Practice [2d ed], § 50, p 115).

the [nontitled] spouse" (Domestic Relations Law, § 236, part B, subd 1, par d, cl [3]).

The term "contributions" is defined for both marital property and maintenance provisions in terms of the efforts made by a party "as a spouse, parent, wage earner and homemaker", whether directed toward the "acquisition of * * * marital property" or the "career or career potential of the other party" (Domestic Relations Law, § 236, part B, subd 5, par d, cl [6]; subd 6, par a, cl [8]).

The inexorable conclusion to be drawn from these definitions is that partnership theory prevails in the distribution of the fruits produced through the efforts of either spouse during marriage, since any efforts not directly related to such production are deemed to have enabled the other spouse to engage in efforts that were so related. Whether these fruits are derived from efforts utilizing separate property or marital property is fundamentally irrelevant.[4]

The contributions of the parties during their marriage are either consumed by them directly or are invested in the accumulation of property, in the production and rearing of children, or in the enhancement of their own skills. Presumably they make their allocation among these competing goals in the full expectation of a lifelong relationship, but with knowledge of the possibility of its dissolution at any point and the consequent disappointment of their expectations. The partnership theory of the Equitable Distribution Law is easily applied to the division of their accumulated property. Other provisions of the Domestic Relations Law govern their rights with respect to their children. The troubling issue here is providing for the sharing of the enhancement of one spouse's marketable skills or the restitution of the lost opportunities of the spouse who sacrificed marketable skills in order to become a homemaker or otherwise advance the other's career.

---

4. Under this analysis, appreciation in passive investments such as bank accounts (as in the case at bar) or securities remains separate property, but appreciation of a business jointly managed by both spouses becomes marital property even though it is owned by one spouse who had managed it alone prior to their marriage. Without this active-passive management distinction, it would not be possible to characterize as marital property the appreciation of a business, owned and operated solely by the one spouse before and during marriage, which happened to be the sole object of the owner-manager's remunerative labors during marriage and the sole pecuniary support of their household (but see *Jolis v Jolis*, 111 Misc 2d 965, 979-980).

Abandoning the partnership analogy at this point, which would leave the parties where they happened to lie at dissolution, the Legislature chose to confer upon the dependent spouse an equitable rather than arbitrarily equal share of marital property, sufficient maintenance for support and, if appropriate, rehabilitation in preparation for a return to the labor market (see *Lesman v Lesman,* 88 AD2d 153, 160, *supra; Leibowits v Leibowits,* 93 AD2d 535, 544 [concurring opn]; Foster and Freed, Virtue Is Not the Only Reward for Spousal Contributions, NYLJ, Jan. 17, 1983, p 1, col 1; cf. Posner, Economic Analysis of Law [2d ed], § 5.3, pp 108-111). Under prior law the courts had, of course, acknowledged the intrinsic value of homemaking and the difficulty of rehabilitating a homemaker for entry into the labor market (see, e.g., *Hickland v Hickland,* 39 NY2d 1, 6; *Kay v Kay,* 37 NY2d 632, 637-638; *Phillips v Phillips,* 1 AD2d 393, 395, affd 2 NY2d 742; *Brownstein v Brownstein,* 25 AD2d 205, 209). The courts failed, however, to authorize such rehabilitation through alimony.

The inflexibility of the former law arose from implementation of the "net needs" rule. Alimony was determined by subtracting from the dependent spouse's needs any present and unrehabilitated earnings potential (see, e.g., *Brownstein v Brownstein, supra; Winkler v Winkler,* 25 Misc 2d 938, affd 13 AD2d 924, affd 11 NY2d 693; *Doyle v Doyle,* 5 Misc 2d 4). Of particular concern to the drafters of the Equitable Distribution Law was the apparent hostility shown the working spouse served with a divorce summons on the supported spouse's graduation day (see Foster and Freed, Virtue Is Not the Only Reward for Spousal Contributions, NYLJ, Jan. 17, 1983, p 1, col 1, p 2, cols 1, 2).

It was one thing to hold that the wife could not ordinarily hitch her cart to her husband's rising star even if she had expended her own capital assets to provide a relatively high preseparation standard of living while her husband attended professional school and finished his training (see *Lebowitz v Lebowitz,* 37 AD2d 841). It was quite another to declare that a husband could not be compelled to pay for his wife's leaving a position as a practical nurse in order to return to college to pursue a Bachelor's degree in nursing (see *Lewis v Lewis,* 37 AD2d 725), or that the "net needs"

rule precluded the court from directing the husband, who had been put through school by his wife, to pay for his wife's resumption of premedical studies because she had demonstrated a substantial earnings potential by working as a secretary during the marriage (see *Morgan v Morgan,* 52 AD2d 804, discussed in Foster and Freed, Virtue Is Not the Only Reward for Spousal Contributions, NYLJ Jan. 17, 1983, p 1, col 1, p 2, cols 1, 2). By invidious comparison, the courts did not hesitate to rule that in today's society it would be entirely proper to require a parent to provide additional child support in order to maximize a talented minor's earnings potential by affording him an education beyond the high school level (see, e.g., *Kaplan v Wallshein,* 57 AD2d 828).

Therefore, in reaction to the narrow application of the alimony provisions in the former law, the Legislature directed that matrimonial courts must consider the contributions of the spouses in whatever role made — spouse, parent, wage earner or homemaker — in awarding an equitable division of marital property plus sufficient permanent or time-limited maintenance as will confer independence on the dependent spouse (Domestic Relations Law, § 236, part B, subd 5, par d, cls [6], [8]; subd 6, par a, cls [3], [4], [6], [8]; Foster and Freed, Virtue Is Not the Only Reward for Spousal Contributions, NYLJ, Jan. 17, 1983, p. 1, col 1; Scheinkman, 1981 Practice Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law, C236B:12, pp 133-134, 1982-1983 Pocket Part; C236B:20, pp 141-142, 1982-1983 Pocket Part). Furthermore, the cross-referencing of the property settlement provisions and the maintenance provisions (Domestic Relations Law, § 236, part B, subd 5, par d, cl [5]; subd 6, par a, cl [1]) confers on the court in a matrimonial action the authority to be flexible in establishing the form of recognition of the dependent spouse's claim for an opportunity for independence. It may be cast in the form of a distribution of marital property or maintenance or both (see Foster and Freed, Virtue Is Not the Only Reward for Spousal Contributions, NYLJ, Jan. 17, 1983, p 1, col 1).

As noted by the Assembly memorandum in support of the Equitable Distribution Law, independence cannot be achieved in all cases; therefore, the Legislature has pro-

vided other criteria to guide the courts in distributing marital property and directing maintenance, such as the age and health of the spouses and the length of the marriage, responsibility for rearing the parties' children, and "any other factor", which would include any misconduct during marriage that impaired the operation of the marital "partnership" in its economic and noneconomic aspects (Domestic Relations Law, § 236, part B, subd 5, par d, cls [2], [3], [10]; subd 6, par a, cls [2], [5], [9], [10]; see Foster and Freed, Equitable Distribution and Marital Fault, NYLJ, July 6, 1983, p 1, col 1).[5]

CONCLUSION

Contrary to defendant wife's arguments, there is no authority in the Equitable Distribution Law to impose upon her husband a judgment debt — not merely a support obligation — of half or some other percentage of the present value of his future services under the degree, no matter how much his skills have been enhanced by her efforts during their marriage. Although the division of marital property and the award of maintenance must give due deference to the partnership premise and the rehabilitative ideal of the new law, we may not indulge in the fiction that an academic degree can be evaluated as reified marital property rather than as one component of his present and future earnings potential relevant to his ability to pay maintenance and to transfer true marital property to his wife.

Indeed, to hold otherwise would result in an absurdity: awarding defendant wife a share in her husband's future earnings, reduced to present value, on the assumption that he will maximize his potential, would necessarily impair the basic assumptions and operation of the Equitable Distribution Law. By virtue of the partnership premise, his earnings during any remarriage are necessarily attribu-

---

5. I do not infer from the new law's emphasis on rehabilitation and the substitution of maintenance and equitable distribution of marital property for alimony, that the Legislature intended to repudiate the practice of taking into consideration a spouse's prospective income growth for purposes of awarding alimony in cases in which the parties had temporarily deferred higher marital living standards in the expectation of such growth (see *Contrubis v Contrubis,* 46 AD2d 615; *Winkler v Winkler,* 13 AD2d 924, affd 11 NY2d 693; *Hunter v Hunter,* 10 AD2d 291, 295; *Millner v Millner,* 60 Misc 2d 122, 124-125).

table only to his efforts and the efforts of any such new spouse — not to defendant wife. Hence defendant wife cannot claim a share in them as marital property.

Furthermore, there is no need for defendant wife to surrender, at the outset, her presumptive right in this action to a valuation of her nonremunerative marital contributions as equal to the remunerative contributions of her spouse. Indeed, what purpose would be served by an evaluation of her sacrificed teaching career other than to subtly undermine the very partnership premise of the Equitable Distribution Law by implying that her marketable skills as a $17,000-a-year teacher and therefore her marital contributions were worth substantially less than those of her $55,000-a-year investment adviser spouse? Such an analysis impugns the status that the Legislature conferred on defendant wife's services as homemaker and mother as equal in dignity with her husband's remunerative employment.

Accordingly, in analyzing the determination under review, it is clear that the education of plaintiff husband, as evidenced by his business degree, is an important factor, but is to be taken into account only as part of his present and future financial circumstances relevant to his ability to pay maintenance and transfer marital property to defendant wife. Hence her request for an evaluation of his degree as marital property itself merely duplicates her request for an evaluation of such present and future financial circumstances.

In awarding $500 as an expert's fee for evaluating the parties' marital property and defendant wife's homemaking services, the court was too generous. The marital property is nothing more than two modest bank accounts and two aging automobiles. Plainly no expert evaluation is necessary for the parties' cash and these chattels. Furthermore, given the basic partnership premise of the new law, the defendant wife's marital contributions as homemaker are presumed equal in value to plaintiff husband's contributions as an income earner, and there is no apparent need at this stage of the litigation for an expert evaluation of her sacrificed teaching career as an alternative — and lesser — valuation of her contributions to the marital partnership.

Therefore, in my opinion, the only evaluation requiring expert help would be that respecting the parties' present and future financial circumstances, including their education as well as work experience. I believe that the nature and extent of such an evaluation, together with the tax advice promised as part of the proposed retainer agreement, justifies the requested award of a $750 fee. I therefore vote to modify the order appealed from by increasing the award of expert fees from $500 to $750.

TITONE, J. P. (concurring in the result only). As the term is commonly understood, a professional license or degree possesses none of the attributes of "property". It has no monetary value on the open market and cannot be transferred, assigned, sold, pledged or inherited. Rather, its attainment represents the culmination of an intellectual effort which money alone cannot buy (see, generally, *Lesman v Lesman,* 88 AD2d 153, 157, app dsmd 57 NY2d 956; *Matter of Graham v Graham,* 194 Col 429, 432; *Mahoney v Mahoney,* 91 NJ 488; cf. *Matter of Oxford Distr. Co. v Famous Robert's,* 5 AD2d 507, 509 [BERGAN, J.]).

Nevertheless, a spouse who contributes to the education of his or her partner has made substantial personal, as well as financial, sacrifices. Moreover, the future earning capacity of the degree holder has been enhanced.

Recognizing the inherent unfairness of this situation, the courts of several sister States have held that the supporting spouse should be reimbursed for the amounts expended and that the degree holder's enhanced earning potential should be considered in determining an appropriate amount of maintenance (see, e.g., *Matter of DeLa Rosa v DeLa Rosa,* 309 NW2d 755, 759 [Minn]; *Mahoney v Mahoney, supra; Hill v Hill,* 91 NJ 506; *Lynn v Lynn,* 91 NJ 510; *Hubbard v Hubbard,* 603 P2d 747, 751 [Okla]; contra *Lesman v Lesman, supra,* relying on *Mahoney v Mahoney,* 182 NJ Super 598, revd 91 NJ 488, *supra*). I agree with this approach.

The analysis of the New Jersey Supreme Court is particularly persuasive. As that court explained, wh    marriage is not a business in which a precise accounting must be had upon the termination of the enterprise, "every joint undertaking has its bounds of fairness. Where a

partner to marriage takes the benefits of his spouse's support in obtaining a professional degree or license with the understanding that future benefits will accrue and inure to both of them, and the marriage is then terminated without the supported spouse giving anything in return, an unfairness has occurred that calls for a remedy" (*Mahoney v Mahoney,* 91 NJ 488, 500, *supra*). The "remedy", akin to the equitable doctrine of restitution, exists aside from maintenance, and "should cover *all* financial contributions towards the former spouse's education, including household expenses, educational costs, school travel expenses and any other contributions used by the supported spouse in obtaining his or her degree or license" (*Mahoney v Mahoney, supra,* p 501).

For these reasons, I cast my vote for modification of the order appealed from and vote to increase the amount awarded to the defendant wife for the services of an expert. I would caution, however, that because, in my view, the degree does not constitute "property" within the meaning of the Equitable Distribution Law, the expert is not to place a "value" as such on the degree. Consideration of the economic value of a professional degree or license is not involved (*Lynn v Lynn,* 91 NJ 510, 518, n 2, *supra*), and the amount of the reimbursement can be ascertained without the need for expert testimony. The expert may, however, testify as to plaintiff's enhanced earning capacity which has resulted from his obtaining the Master's degree in business administration (cf. *Ahern v Ahern,* 94 AD2d 53; *Litman v Litman,* 93 AD2d 695).

GULOTTA, J. (concurring in the result only). Although I agree that the order appealed from should be modified and that the amount awarded to the defendant wife to retain an expert to evaluate the economic incidents of the instant marriage should be increased from $500 to the $750 requested by her, I do so on a different basis than some of my colleagues.

In my view, an educational or professional degree is not "marital property" within the meaning and intent of the Equitable Distribution Law, and may not therefore be assigned a per se "dollars and cents" value akin to that possessed by a piece of furniture or a share of stock (see

*Lesman v Lesman,* 88 AD2d 153, 155). The value, if any, of such a degree is solely attributable to the use which may be made of it in terms of the increased earnings potential of the benefited spouse, and, pursuant to statute, the contributions of the other spouse to this increased earning capacity are required to be considered when equitably dividing the marital property and determining an appropriate award of maintenance (see Domestic Relations Law, § 236, part B, subd 5, par d, cl [6]; subd 6, par a, cl [8]).

Accordingly, while I quite agree that the defendant wife is entitled to retain an expert to evaluate *all* of the financial aspects of the instant marriage, including, *inter alia,* an expert evaluation of the increased earnings potential represented by her husband's Master's degree in business administration, and that the results of such an evaluation are necessary and relevant to a proper resolution of the economic issues involved in the dissolution of this marriage (see Domestic Relations Law, § 236, part B, subd 5, par d, cl [6]; subd 6, par a, cl [8]), I cannot subscribe to the view that the degree itself may be regarded as "marital property" subject to equitable distribution (see *Lesman v Lesman, supra*).

BRACKEN and BROWN, JJ. (concurring in the result only). In this matrimonial action brought pursuant to the provisions of part B of section 236 of the Domestic Relations Law, we are asked to determine whether Special Term, in authorizing the wife to retain at the husband's expense an economist and certified public accountant to examine the financial aspects of the marriage relationship, properly precluded that expert from evaluating, *inter alia,* the husband's educational background, including his master of public administration and master of business administration degrees from Harvard University attained during the course of the marriage. We conclude that Special Term was in error in so limiting the expert evaluation sought herein.

An examination of the provisions of part B of section 236 of the Domestic Relations Law makes it abundantly clear to us that the court is required to take cognizance of what has come to be known as the "student-spouse-working-spouse syndrome" in fashioning an appropriate equitable award upon the termination of a marriage and that the

relevant issue for the court in such case is the form of such recognition and the value to be placed thereon (see Foster and Freed, Virtue Is Not the Only Reward for Spousal Contributions, NYLJ, Jan. 17, 1983, p 1, col 1).

In reaching our conclusion, we are not prepared to adopt the view of our concurring brethren and our colleagues in the Fourth Department who hold that a professional degree is not "marital property" (*Lesman v Lesman,* 88 AD2d 153). The fact that such a degree is personal to the holder and inalienable, i.e., without exchange value on the open market, is not, in our opinion, the determinative factor. In enacting the Equitable Distribution Law (Domestic Relations Law, § 236, part B), the Legislature rejected traditional definitions of property in favor of an expanded concept which recognizes that marriage is, among other things, an economic partnership (see *Litman v Litman,* 93 AD2d 695, 696; *O'Brien v O'Brien,* 114 Misc 2d 233, 237; Governor's memorandum of approval, McKinney's Session Laws of NY, 1980, p 1863), and that upon its termination, the assets accumulated as a result of the individual or joint efforts or expenditures of the parties should be distributed in accordance with their equitable claims (see 2 Foster-Freed, Law and the Family — New York, § 33:4-A [1983 Cum Supp]). As one commentator has aptly stated:

" 'Marital property,' itself, hardly falls within the 'traditional concepts of property.' There is no common law property interest remotely resembling 'marital property.' It is a statutory creature, is of no meaning whatsoever during the normal course of a marriage and arises full-grown, like Athena, upon the signing of a separation agreement or the commencement of a matrimonial action. It is hardly surprising, and not at all relevant, that traditional common law property concepts do not fit in parsing the meaning of 'marital property.'

" 'Marital property' is simply a shorthand for defining those things of value as to which the spouses have an equitable claim based upon a remedial statute and arising out of the marital relationship, irrespective of the common law ownership thereof. Our approach to defining 'marital property' must, therefore, be from the perspective of pro-

tecting that statutorily created equitable claim" (Florescue, "Market Value", Professional Licenses and Marital Property: A Dilemma in Search of a Horn, NY St Bar Assn Fam L Rev [Dec., 1982] 13).

The Equitable Distribution Law incorporates the view that the definition of "property" is the legal relation between persons with respect to a thing (Restatement, Property [1936 ed], §§ 1-4; see 2 Foster-Freed, Law and the Family — New York, § 33:8-B [1983 Cum Supp]; Note, Equitable Distribution of Degrees and Licenses: Two Theories Toward Compensating Spousal Contributions, 49 Brooklyn L Rev 301, 310-314). Under this view, a professional degree is clearly property. Although it may not be sold, assigned or inherited and does not have a market value in the traditional sense, it clearly has a value in terms of future enhanced earning capacity to the holder. To ignore this fact is to render irrelevant the considerable expenditures necessary to obtain such a degree, including tuition, books and time during which the student could have obtained employment and derived income. Moreover, in the context of a marriage, the nonstudent spouse may also have contributed substantially to the student spouse's pursuit of a degree, both in terms of direct financial support and indirectly in the role of a homemaker and parent (see *Wood v Wood,* 119 Misc 2d 1076). In addition, the expenditure of marital assets in pursuit of a degree will inevitably require the parties to defer or forego acquisition of other assets (e.g., home, personalty, savings, investments), which would have constituted "marital property" even under the traditional view. The nonstudent spouse may also defer his or her own educational and career goals in order to promote the efforts of the student spouse. From the point of view of an economic partnership, the direct and indirect contributions of the nonstudent spouse towards the student spouse's degree are made with the goal of generating increased income to the marital partnership in the future. Under the Equitable Distribution Law, those contributions give rise to an equitable claim by the nonstudent spouse against the value of the degree. As such, the degree should properly be considered to fall within the definition of "marital property", i.e., "all property acquired by either or

both spouses during the marriage * * * regardless of the form in which the title is held" (Domestic Relations Law, § 236, part B, subd 1, par c).

While it is argued that the enhanced earning capacity derived from a professional degree is only an uncertain future expectancy which is too speculative to be viewed as "marital property" (see *Lesman v Lesman, supra*), this court nonetheless recently has held that a law practice is a proper subject of a distributive award (*Litman v Litman*, 93 AD2d 695, *supra*) and further has concluded that non-vested pension benefits constitute "marital property" subject to equitable distribution upon divorce (*Damiano v Damiano*, 94 AD2d 132; *D'Amato v D'Amato*, 96 AD2d 849). If a professional practice or pension fund is to be viewed as "marital property", law and logic dictate that a degree be treated likewise, since all involve future expectancies to some extent. The increased earning capacity derived from a degree is, for example, no less certain than receipt of nonvested pension benefits, which is contingent upon the employee spouse remaining at his or her employment until the benefit matures (*Damiano v Damiano, supra*, p 137). While inclusion of these items as "marital property" might present difficult problems of valuation, such difficulty cannot justify denial of the nonstudent spouse's equitable share of the increased earnings derived from a degree. In fact, such valuation is a routine element of proof in personal injury cases.

With respect to the question of valuation, the trial court must consider both the direct and indirect contributions of the nonstudent spouse toward the student spouse's degree (Domestic Relations Law, § 236, part B, subd 5, par d, cl [6]). Direct contributions include financial support of the student spouse while he or she is earning a degree, but of no less importance are those indirect contributions made by the nonstudent spouse which enable the student spouse to complete the educational process. Such indirect contributions should include the monetary value of services as a homemaker and parent. "The nonremunerated efforts of raising children, making a home, performing a myriad of personal services and providing physical and emotional support are, among other noneconomic ingredients of the

marital relationship, at least as essential to its nature and maintenance as are the economic factors, and their worth is consequently entitled to substantial recognition" (*Wood v Wood,* 119 Misc 2d 1076, 1079, *supra*). Moreover, we note that in this case, valuation must be made with respect to each of two degrees: a Masters degree in public administration and a Masters degree in business administration.

Once having determined the total value of the nonstudent spouse's contributions toward attainment of the two degrees, and the amount expended by the student spouse as well, the trial court can then apportion the contribution of each spouse toward the total cost of the degrees. The percentage of the nonstudent spouse's contributions can then be applied to the future earnings attributable to each degree, discounted to present value.

The Equitable Distribution Law affords the court great flexibility in tailoring its award to fit the facts of each particular case. The statute directs that in determining an appropriate equitable distribution of marital property under the Equitable Distribution Law, the court consider, among other things: "any equitable claim to, interest in, or direct or indirect contribution made to the acquisition of such marital property by the party not having title, including joint efforts or expenditures and contributions and services as a spouse, parent, wage earner and homemaker, and to the career or career potential of the other party" (Domestic Relations Law, § 236, part B, subd 5, par d, cl [6]). The court is also mandated under that same subdivision to take cognizance of "the probable future financial circumstances of each party" (Domestic Relations Law, § 236, part B, subd 5, par d, cl [8]). Similarly, in that portion of the statute dealing with the awarding of maintenance the Legislature has directed that in determining the amount and duration of an award of maintenance the court must consider, among other things, the "contributions and services of the party seeking maintenance as a spouse, parent, wage earner and homemaker, and to the career or career potential of the other party" (Domestic Relations Law, § 236, part B, subd 6, par a, cl [8]).

Once the court has heard evidence regarding the career potential of the husband herein and has evaluated the

wife's claimed contribution thereto, and has examined all of the other factors which it is required to consider under the Equitable Distribution Law (Domestic Relations Law, § 236, par B, subds 5, 6), it will be able to make an appropriate award in this case. It may make an equitable distribution of the value of the degree based on the factors set forth in section 236 (part B, subd 5, par d) of the Domestic Relations Law, or it may make a distributive award in lieu thereof pursuant to section 236 (part B, subd 5, par e) of the Domestic Relations Law. In addition, it may consider the value of the degrees in determining the amount and duration of maintenance under section 236 (part B, subd 6) of the Domestic Relations Law. As Professor Foster and Dr. Freed point out in their article: "[I]t may be equitable to recognize the contributions of the working spouse to the student spouse in the equitable distribution of the family assets, or in the granting [*sic*] a distributive award, or in setting the amount and duration of maintenance. Such forms of recognition are not mutually exclusive and any or all may be utilized, depending upon the economics of the particular case" (Foster and Freed, Virtue Is Not the Only Reward for Spousal Contributions, NYLJ, Jan. 17, 1983, p 1, col 1, p 2, col 1).

Merely to argue as our colleagues do that the value of the degrees herein has relevance only with respect to the fixing of maintenance is to ignore the express purposes of the Equitable Distribution Law. "The function of equitable distribution is to recognize that when a marriage ends, each of the spouses, based on the totality of contributions made to it, has a stake in and right to a share of the marital assets accumulated while it endured, not because that share is needed, but because those assets represent the capital product of what was essentially a partnership entity" (*Wood v Wood*, 119 Misc 2d 1076, 1079, *supra*). While "marital property" is to be equitably distributed, maintenance is awarded on the basis of "reasonable needs" (Domestic Relations Law, § 236, part B, subd 6, par a). Thus, the nonstudent spouse who supported the student spouse during marriage and enabled the student spouse to obtain a degree, would, upon divorce, in all likelihood not be entitled to maintenance because he or she would remain

self-supporting. If maintenance were the only form of award to which the nonstudent spouse was entitled, he or she would simply not be compensated for the contributions made to the marital partnership (see *O'Brien v O'Brien*, 114 Misc 2d 233, 237, *supra*). Similarly, since an award of maintenance terminates upon the recipient's remarriage (Domestic Relations Law, § 236, part B, subd 1, par a), the nonstudent spouse who remarries might not be fully compensated for his or her contributions to the student spouse's education and degree (*O'Brien v O'Brien, supra,* p 237). If equitable distribution is in fact to be done equitably, the court must be permitted to distribute marital property in such a way as to fairly account for the contributions made by each spouse. In order to achieve a just result, the award cannot be limited to maintenance.

Nor do we accept the position that the concept of reimbursement maintenance be the vehicle whereby equitable consideration may be given to the working spouse for contributions made towards educating the student spouse. Nowhere, either in the statute or in any statements of legislative intendment, do we find, either explicitly or implicitly, such a concept embraced. Using such a rationale merely serves to emasculate the plain language and import of the Equitable Distribution Law and to apply in its stead a creature of judicial construction, which was developed originally in jurisdictions where general statutes using equitable language allow a broad judicial interpretation. Such is clearly not the case in New York.

Since, in our view, the value of a professional degree is properly subject to equitable distribution, the expert's fee sought herein should be allowed (see *Ahern v Ahern*, 94 AD2d 53; see, also, L 1983, ch 86, eff June 9, 1983).

Titone, J. P., and Gulotta, J., concur in result only in separate opinions; Bracken and Brown, JJ., concur in result only in a joint opinion.

Order of the Supreme Court, Suffolk County, dated August 20, 1982, modified, on the law and the facts, by increasing the award for expert fees from $500 to $750, and by adding a provision thereto that the expert fees awarded may be used to evaluate the parties' present and future financial circumstances, including their education and

work experience. As so modified, order affirmed insofar as appealed from, with costs to defendant wife. Plaintiff husband shall pay said sum within 20 days after service upon him of a copy of the order to be made hereon, with notice of entry.