■ MILDRED RUBIN, Respondent-Appellant, v IRWIN S. RUBIN, Appellant-Respondent. — In a matrimonial action, the defendant husband appeals, as limited by his notice of appeal and brief, from so much of a judgment of the Supreme Court, Nassau County (Morrison, J.), dated April 19, 1983, as (1) ordered him to pay the plaintiff wife maintenance in the amount of $550 per week until such time as she remarries or dies, (2) provided that "plaintiff shall retain her full one-half interest of [sic] the marital premises * * * free of any claim by defendant" as separate property not subject to equitable distribution, and (3) directed him to pay the sum of $7,500 as and for plaintiff's counsel fees and disbursements, and the plaintiff wife cross-appeals, as limited by her notice of appeal and brief, from so much of the same judgment as (1) provided that defendant's interest in a closely held corporation named Trion Industries, Inc., and the pension plans he obtained through that corporation, are his separate property, not subject to equitable distribution and (2) awarded her only $7,500 in counsel fees and disbursements.

Judgment modified, on the law and the facts, by (1) adding to the fourth decretal paragraph thereof a provision directing that the marital residence be sold, with the net proceeds thereof to be divided equally between the parties, after the satisfaction of the mortgage and the payment of all applicable expenses, including closing costs; (2) deleting from the fifth decretal paragraph thereof the words "and defendant's Pension Plan therein", and (3) deleting the seventh decretal paragraph thereof and substituting therefor a provision requiring defendant to pay plaintiff maintenance in the sum of $475 per week, by check or money order on the Friday of each week, for a period of five years after the date of entry of the judgment of divorce, or until she sooner remarries or dies. As so modified, judgment affirmed insofar as appealed from, without costs or disbursements. The matter is remitted to Special Term for further proceedings in accordance herewith for a determination concerning the valuation and equitable distribution of defendant's interests in his pension plans from Trion Industries, Inc., which accrued during the parties' marriage prior to the commencement of the matrimonial action. The findings of fact by Special Term are affirmed, except where specifically indicated otherwise herein. The time within which the marital residence shall be sold in accordance with the fourth decretal paragraph of the judgment, as modified, is extended until one year after the date of the order to be made hereon.

The parties were married on December 17, 1973. This was the second marriage for both parties and they each had custody of two children from their prior marriages, all of whom moved into the marital residence located at 57 Wensley Drive in Great Neck, New York. At the time of the marriage, the youngest of the children of the parties was 10 years of age. No children were born of this marriage. Plaintiff commenced this action for divorce by service of a summons and verified complaint on or about November 11, 1980, when the parties had been married just under seven years. The action was tried before Justice Henderson W. Morrison of the Supreme Court, Nassau County, from January 24 to February 1, 1983. In March, 1983, when Justice Morrison issued his decision after the trial, defendant was 52 years of age and plaintiff was 45.

Under the circumstances presented in this case, we conclude that the award of maintenance to plaintiff in the amount of $550 per week terminable only upon her remarriage, or death, constituted an abuse of discretion. The record of the lengthy trial contains sufficient evidence concerning the circumstances of the parties to enable this court to exercise its authority to make new

findings of fact on the issue of maintenance, in accordance with the factors outlined in section 236 (part B, subd 6, par a) of the Domestic Relations Law, in lieu of remitting the matter to Special Term for this purpose (see *Kobylack v Kobylack,* 62 NY2d 399, 403, revg 96 AD2d 831; *Majauskas v Majauskas,* 61 NY2d 481, 493-494; *Duffy v Duffy,* 94 AD2d 711, 712). We conclude, for the reasons discussed below, that the award of maintenance to plaintiff should be reduced to the sum of $475 per week and limited in duration to five years after the date of entry of the judgment of divorce, or until she sooner remarries or dies. We take note of the fact that the parties agreed to a reduction in the amount of maintenance to $425 per week pending the determination of this appeal in a stipulation of settlement, entered into an open court on September 13, 1983, after plaintiff obtained an order to show cause to hold defendant in contempt for failing to comply with the original maintenance award in the judgment of divorce.

Special Term failed to give sufficient weight to the following factors in formulating the amount and duration of the maintenance award: the short duration of this childless marriage, the reduction in defendant's income from his business in the years immediately following the commencement of the matrimonial action, the absence of minor children in the homes of the respective parties, plaintiff's ability to earn money to support herself after an initial period of adjustment and retraining and her lack of significant monetary or nonmonetary contributions to the parties' household or to defendant's business career during the marriage (see Domestic Relations Law, § 236, part B, subd 6, par a, cls [1], [2], [3], [4], [5], [8]; see, also, *Duffy v Duffy, supra*). The evidence adduced at trial indicates that defendant's gross annual income from Trion Industries, Inc., the closely held corporation in which he and another principal each own half of the shares of capital stock, declined from $110,000 in 1980, the year in which the matrimonial action was commenced, to $88,864 in 1981 and $70,002.03 in 1982. Special Term found that, at the time of trial, defendant's income from the business remained at the level of $70,000 per year. The decline in defendant's income is attributable, in part, to an agreement between Trion Industries, Inc., and the Pennsylvania Industrial Development Authority, which required, as a condition for a low-interest loan to enable the corporation to acquire a new building in Wilkes-Barre, Pennsylvania, that the corporation's two principals limit their combined salaries to $140,000, with no increases in salary until the business attains a certain level of net income. The maintenance award of $550 per week, which represents $28,600 annually, is excessive, as it will consume over 40% of

defendant's current gross income and an even larger percentage of his current net income, which should provide the basis for establishing the level of the maintenance award (see *Dobbins v Dobbins*, 59 AD2d 548; *Somach v Somach,* 49 AD2d 592; Scheinkman, 1981 Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law, C236B:20, 1983-1984 Pocket Part, p 165). There is no evidence that defendant is deliberately concealing any of his income or assets.

Special Term correctly concluded that plaintiff contributed no money to the support of the household, except the child support payments she received from her first husband. Her nonmonetary contributions as a parent and homemaker also appear to have been minimal, according to the testimony of defendant and his daughter Lita, which we credit (see Domestic Relations Law, § 236, part B, subd 6, par a, cl [8]). Special Term correctly found that plaintiff devoted a great deal of her time and energies during the marriage to the leisure pursuits of bridge and tennis. We also agree with the finding of Special Term that plaintiff's alleged medical problems do not result in any disabilities which would preclude her from obtaining employment to contribute toward her own support (see Domestic Relations Law, § 236, part B, subd 6, par a, cl [2]). Special Term failed, however, to give sufficient weight to the above factors when it formulated the maintenance award. Additionally, we conclude, based upon the evidence adduced at trial, that the failure of plaintiff, who is certified as an elementary school teacher and has been trained to serve as a sales representative for a travel agency, to obtain any significant gainful employment during the marriage resulted not from her inability to do so, but from her conscious choice to devote her time to leisure pursuits. The five-year duration of the reduced maintenance award we have prescribed will allow plaintiff sufficient time to make the adjustments and to obtain the retraining necessary to support herself (see Domestic Relations Law, § 236, part B, subd 6, par a, cl [4]). We reject plaintiff's contention that the standard of living experienced by the parties during the marriage should be the primary determinant of the amount of the maintenance award under the equitable distribution statute. The relevant portion of section 236 of the Domestic Relations Law authorizes the court to consider, as one of the factors in determining the amount and duration of the maintenance award, "the standard of living established during the marriage *where practical and relevant*" (Domestic Relations Law, § 236, part B, subd 6, par a, cl [6]; emphasis supplied; see, also, *Jolis v Jolis,* 111 Misc 2d 965, 990, affd 98 AD2d 692). It is inequitable to require defendant, a man who is in his fifties, to

support plaintiff for an indefinite period of time in the life-style of leisure she had chosen during the marriage.

We conclude that Special Term did not abuse its discretion by permitting plaintiff to retain the one-half interest in the marital residence which defendant had transferred to her during the marriage pursuant to a written agreement of the parties. The agreement, which was executed and subscribed by the parties early in their marriage in March, 1974, transferred the title to the marital residence, which had previously been owned solely by defendant, to the parties jointly as tenants by the entirety, on the condition that if plaintiff should become the sole owner by right of survivorship, she would guarantee the right of defendant's children to use and occupy that residence or any home she would subsequently purchase. Special Term failed to properly set forth the specific statutory factors it considered in arriving at its disposition of the marital residence (see Domestic Relations Law, § 236, part B, subd 5, par g; *Nielsen v Nielsen,* 91 AD2d 1016). Nevertheless, there is sufficient evidence in the record for this court to uphold the determination of Special Term in this regard, based upon our own analysis of the statutory factors. The fact that the marital residence was owned jointly by the parties as tenants by the entirety does not preclude an unequal distribution of the marital residence among the parties, if such a result is warranted by a consideration of the statutory factors (see *Duffy v Duffy,* 94 AD2d 711, *supra*). Defendant is correct that, as was the case with the maintenance award, certain statutory factors would justify a distribution to plaintiff of a less than equal share of the marital residence. These factors include the short duration of the marriage, the lack of a need for a custodial parent to occupy the home and plaintiff's relatively minimal monetary and nonmonetary contributions to the acquisition and maintenance of the home and the maintenance of the parties' household (see Domestic Relations Law, § 236, part B, subd 5, par d, cls [2], [3], [6]). We conclude, however, that it is appropriate that plaintiff retain her half interest in the marital residence, as she is older and has been out of the job market significantly longer than the wife in *Duffy v Duffy (supra)*. We direct that the marital residence be sold within one year after the date of the order of this court to be made hereon and that the net proceeds be divided equally, after the satisfaction of the mortgage and the payment of all applicable expenses, including closing costs. The proceeds plaintiff will receive from the sale of the marital residence will provide her with a financial cushion until she is able to become self-supporting. This result is particularly appropriate in view of our reduction in the amount

and duration of the maintenance award (see Domestic Relations Law, § 236, part B, subd 5, par d, cl [5]).

Defendant's half interest in the closely held corporation of Trion Industries, Inc., dates back substantially prior to his marriage to plaintiff and, thus, constitutes his separate property pursuant to section 236 (part B, subd 1, par d, cl [1]) of the Domestic Relations Law. Special Term correctly concluded that plaintiff was not entitled to a distributive award based upon the appreciation in value of defendant's interest in Trion Industries during the marriage, as she made no direct or indirect contributions to that business (see Domestic Relations Law, § 236, part B, subd 1, par d, cl [3]; *Jolis v Jolis,* 98 AD2d 692, *supra*).

Special Term erroneously failed to consider as marital property the increase in value of the pension plans maintained on behalf of defendant by Trion Industries, Inc., attributable to his employment during the marriage prior to the commencement of the matrimonial action (see *Majauskas v Majauskas,* 61 NY2d 481, *supra; Damiano v Damiano,* 94 AD2d 132). The only evidence adduced at trial concerning the value of defendant's pension plans was a document prepared by an employee of Trion Industries, Inc., stating that the total value of the vested benefits in the two pension plans maintained on behalf of defendant by that company as of September 30, 1980, just prior to the commencement of the matrimonial action, was $192,750.49. The parties' attorneys stipulated that the value of defendant's pension plans at the time the parties were married was approximately $80,000. In order to arrive at a more accurate value for the portion of defendant's pension interests which constitute marital property subject to equitable distribution, it is necessary to remit the matter to Special Term for further findings of fact concerning the amount of the contributions made to defendant's pension plans, by himself and by the corporation, during the period that he was married to plaintiff prior to the commencement of the matrimonial action, and the interest or earnings which accrued from the above contributions during the same period. We recognize that in some cases, it may be appropriate to include in the value of a spouse's pension interests subject to equitable distribution the interest or earnings from the contributions made to the pension plans prior to the marriage, which accrued during that marriage and prior to the commencement of the matrimonial action (see *Majauskas v Majauskas,* 61 NY2d 481, 492, *supra*). We do not believe that this is appropriate in the instant case, however, in view of the finding that plaintiff did not make any contributions to the appreciation in value of Trion Industries, Inc., during the period that she was married to

defendant (see Domestic Relations Law, § 236, part B, subd 1, par d, cl [3]). After arriving at a more accurate valuation for the portions of defendant's interests in the two pension plans which constitute marital property, Special Term should make findings of fact concerning the equitable distribution to plaintiff of a share of those pension benefits, in accordance with the factors enumerated in section 236 (part B, subd 5, par d) of the Domestic Relations Law.

Finally, we see no reason to modify the award of counsel fees made by Special Term. Bracken, Weinstein and Niehoff, JJ., concur.

Lazer, J. P., concurs in part and dissents in part, with the following memorandum. During the seven years of this second marriage for both parties, the wife of the highly affluent defendant sought no employment and engaged in leisure pursuits. The defendant, a very successful business entrepreneur, had an annual income that generally exceeded $100,000, most of which was protected through the use of four tax shelters. The defendant paid taxes on some $48,000 of his $110,000 income in 1980. He now protests the trial court's maintenance allowance of $550 per week on the ground that it will consume too much of his gross income and my colleagues have voted to reduce that sum to $475 and to limit the award to five years' duration.

The fact of the matter is that tax considerations will likely reduce the net cost to defendant of the maintenance payments to well below the $550 Special Term directed him to pay, while at the same time reducing the plaintiff's net maintenance quite considerably. The equity realized by the plaintiff from the sale of the marital abode may well be reduced by the huge sums allegedly due her lawyer, and the sale of the property will involve additional expenses and likely subject her resources to the strain of acquiring or otherwise paying for housing accommodations. While plaintiff's approximately seven-year marriage to a wealthy individual does not endow her with the right to his eternal support, her reduction to relative penury need not proceed as quickly and as sharply as the majority would have it. Defendant's financial circumstances are better now than ever and his temporary reduction in income to achieve a huge benefit for his corporation provides no basis to modify Special Term's wise exercise of discretion as to the appropriate amount of maintenance.

Therefore, I dissent from the result reached by the majority to the extent of the reduction in plaintiff's maintenance, and as to that portion of the judgment, I vote to affirm.