JACKLYNN N. PRICE, Respondent-Appellant, v HAROLD PRICE, Appellant-Respondent.

Second Department, December 9, 1985

300

---

APPEARANCES OF COUNSEL

*Tenzer, Greenblatt, Fallon & Kaplan (James H. Goodfriend* of counsel), for appellant-respondent.

*Barry Leibowicz* for respondent-appellant.

**OPINION OF THE COURT**

MOLLEN, P. J.

The instant appeals present an issue which has been the subject of considerable debate, to wit, under what circumstances and to what extent will a nontitled spouse be entitled to share in the appreciation in value of separate property which appreciation occurred from the inception of the marriage to the date of the commencement of the divorce action (see, Domestic Relations Law § 236 [B] [1] [d] [3]). More specifically, the appeals raise the question of whether a nontitled spouse's contributions as a homemaker and parent are entitled to recognition by the court in awarding said spouse a share of the appreciated value of the other spouse's separate property.

The parties were married on November 15, 1969 in the State of New York. For several years prior to the marriage defendant had been involved in a family-owned corporation entitled Unity Stove Company (Unity), which was engaged in the wholesale supply of kitchen parts and appliances. Defendant had received 25% of the outstanding stock of Unity in 1957 as a gift from his father and another 25% in 1972, during the parties' marriage, also as a gift. In 1982, after the initiation of the instant divorce proceeding, defendant became Unity's sole shareholder by reason of the corporation's redemption of the outstanding shares held by defendant's brother. Defendant also possesses an interest in H & SP Realty, Inc. which holds title to the real estate holdings of Unity.

Prior to the parties' marriage, plaintiff had been working as a registered nurse at Mount Sinai Hospital for approximately one year but terminated her employment upon her marriage to defendant. For the first six months of their marriage, plaintiff worked full time in defendant's business. For six months thereafter, plaintiff worked part time as a private duty nurse at Doctor's Hospital. Upon the birth of the parties' first of two children in 1972, plaintiff ceased working outside the home and concentrated her efforts on being a homemaker and parent. In addition to her contributions as a homemaker and parent, however, plaintiff conferred with Unity's customers on several occasions, entertained her husband's business associates, attended business conventions with her husband and assisted in other business-related social events.

Plaintiff commenced the instant divorce proceeding in 1981.

As part of her equitable distribution award, plaintiff sought a percentage of defendant's interest in Unity and related companies. Special Term denied plaintiff's request, finding that defendant's business interests constituted "separate property" since defendant had acquired his shares in Unity and its related companies as gifts *(see,* Domestic Relations Law § 236 [B] [1] [d] [1]). Special Term also concluded that plaintiff was not entitled, under Domestic Relations Law § 236 (B) (1) (d) (3), to share in the appreciation in value of defendant's separate property business interests which occurred during the parties' marriage since the services she rendered to Unity were "minimal and inconsequential". The court noted further, "[plaintiff's] indirect contributions were likewise insignificant. The business was firmly established by the time she came on the scene and if, indeed, the value of the company did appreciate during the years of the marriage herein, there is little or nothing in the record to support her claim that she was in any way responsible for that success. Any claim that an occasional dinner with business associates, attendance at conventions and trade shows, and occasional entertainment of business acquaintances in the marital home resulted in increased profits for the corporation is purely speculative".

■ While we agree with Special Term insofar as it determined that defendant's interests in Unity and related companies constituted "separate property" *(see, Wegman v Wegman,* 129 Misc 2d 968; *cf. Roffman v Roffman,* 124 Misc 2d 636), we disagree with the court's conclusion that plaintiff is not entitled to share to some extent in the appreciation of defendant's business interests which occurred during the parties' marriage.

At the outset, it is significant to note that the provisions of the equitable distribution statute permit a nontitled spouse, in certain instances, to share in the value appreciation of separate property which occurred during the marriage. This principle is reflected in one of the statute's definitions of separate property contained in Domestic Relations Law § 236 (B) (1) (d) (3), which provides: "property acquired in exchange for or the increase in value of separate property, *except to the extent that such appreciation is due in part to the contributions or efforts of the other spouse"* (emphasis added).

The italicized statutory language has presented the courts with the task of ascertaining the legislative intent behind the phrase "contributions or efforts". As a general rule, the courts have uniformly agreed that where the nontitled spouse makes

"direct" contributions such as actively managing the separate property and/or making financial contributions towards the enhancement of such property, that spouse is entitled to share in the appreciation of that asset to the extent attributable to his or her efforts (see, Nolan v Nolan, 107 AD2d 190; Brennan v Brennan, 103 AD2d 48, 53; Jolis v Jolis, 111 Misc 2d 965, affd 98 AD2d 692; Wood v Wood, 119 Misc 2d 1076). Divergent views, however, have been expressed by the courts on the question of whether the nontitled spouse's "indirect" contributions as a homemaker, parent and spouse are entitled to similar recognition under Domestic Relations Law § 236 (B) (1) (d) (3). For example, in Jolis v Jolis (supra) the First Department concluded that the homemaking and parenting efforts of the plaintiff wife did not entitle her to a percentage of the appreciation of her husband's separate property interest in a family-owned diamond business. The parties in Jolis had been married for approximately 38 years. Upon the parties' marriage in 1939, plaintiff wife gave up a promising acting and singing career to become a full-time wife, homemaker and mother of four sons. At the time of the marriage, the defendant husband had been involved in the family business, which had been formed one year prior. During the marriage, the defendant concentrated his efforts on the diamond business which had achieved extraordinary success. The trial court in Jolis determined that while plaintiff's services as a homemaker and parent were substantial, the effect such contributions had on the success of the defendant's business was primarily "indirect and speculative" (Jolis v Jolis, supra, at p 979) and that these indirect contributions did not entitle the plaintiff to share in the appreciation in value of her husband's business. In construing Domestic Relations Law § 236 (B) (1) (d) (3), the trial court in Jolis found it significant that the clause did not contain the specific language of Domestic Relations Law § 236 (B) (5) (d) (6) requiring the court in calculating a distributive award of marital property to consider a spouse's "contributions and services as a spouse, parent, wage earner and homemaker, and to the career or career potential of the other [spouse]". Thus, the court reasoned that the Legislature apparently intended a construction of the phrase "contributions or efforts" toward the appreciation in value of separate property to exclude these types of indirect contributions (Jolis v Jolis, supra, at p 979).

On appeal, the First Department in Jolis (supra), with a lone Justice dissenting, agreed that the omission of the quoted

language from Domestic Relations Law § 236 (B) (1) (d) (3) was relevant to the construction of the phrase "contributions or efforts" found in that section. Interestingly, however, the court limited the scope of its holding in *Jolis* by stating: "[W]e decline to foreclose the possibility that other cases may disclose circumstances in which services as a spouse, parent, wage earner, or homemaker in fact contributed to the appreciation of the other spouse's separate property, circumstances not presented in the instant case" *(Jolis v Jolis, supra,* at p 692).

In recent cases, trial and appellate courts have expressed a more liberal interpretation of Domestic Relations Law § 236 (B) (1) (d) (3). In *Wood v Wood* (119 Misc 2d 1076, *supra),* for example, Justice Geiler, disagreeing with the holding in *Jolis,* expressed the view that a spouse's indirect contributions as a homemaker and/or parent may be considered by the court in awarding a percentage of the appreciation of the other spouse's separate property. Justice Geiler, relying on the legislative intent inherent in the equitable distribution statute, reasoned that the institution of marriage is a joint enterprise whose success is dependent on a variety of factors, financial and otherwise. "The nonremunerated efforts of raising children, making a home, performing a myriad of personal services and providing physical and emotional support are, among other noneconomic ingredients of the marital relationship, at least as essential to its nature and maintenance as are the economic factors, and their worth is consequently entitled to substantial recognition" *(Wood v Wood, supra,* at p 1079). With this premise, Justice Geiler construed Domestic Relations Law § 236 (B) (1) (d) (3) to permit the recognition of a nontitled spouse's efforts as a homemaker and parent by the court by awarding him or her a share of the appreciation in value of a separate property asset.

The rationale of *Wood v Wood (supra)* has been adopted and applied in a number of subsequent cases *(see, Nolan v Nolan,* 107 AD2d 190, *supra; Brennan v Brennan,* 103 AD2d 48, *supra; Sementilli v Sementilli,* 102 AD2d 78; *Van Ess v Van Ess,* 100 AD2d 848; *Roffman v Roffman,* 124 Misc 2d 636, *supra; Wegman v Wegman,* 129 Misc 2d 968, *supra; see also, Cappiello v Cappiello,* 110 AD2d 608, *affd* 66 NY2d 107).

It is clear that this latter interpretation of Domestic Relations Law § 236 (B) (1) (d) (3) is more in keeping with the legislative intent behind the equitable distribution statute. When equitable distribution was enacted into law, then Gover-

nor Carey, in his executive memorandum, explained that the statute was premised upon the principle that the marriage relationship is an economic partnership and that property acquired during the marriage should be distributed in accordance with this view (see, Governor's Memorandum of Approval, 1980 McKinney's Session Laws of NY, at 1863). The concept of equitable distribution is a corollary to the concept that marriage is comprised of multiple components of both an economic and noneconomic nature, and that each of these components is entitled to substantial recognition with regard to its effect on the success and vitality of the marriage (see, Wood v Wood, supra). Thus, the function of equitable distribution is to insure that when a marriage comes to an end, each of the spouses, based on his or her relative contributions, will be entitled to a share of the family assets accumulated while the marital relationship endured (see, Conner v Conner, 97 AD2d 88, 99; Forcucci v Forcucci, 83 AD2d 169, 171). To this end, the equitable distribution statute gives recognition to the essential supportive role played by the wife in the home (see, Domestic Relations Law § 236 [B] [5] [d] [6]).

Viewed from this perspective, it would be untenable to conclude that the Legislature intended a construction of the meaning of a nontitled spouse's "contributions or efforts" which would exclude his or her services as a homemaker and parent and thereby limit the statutory exception to direct contributions in the form of money and/or active management of a separate property asset. Certainly, nonremunerated services of a nontitled spouse to the joint marital enterprise in the form of homemaking, raising children and providing the moral, psychic and emotional support necessary to sustain the other spouse in coping with the vicissitudes of life outside the home, thus enabling the other spouse to concentrate his or her efforts successfully in the furtherance of the economic interests of the marital partnership, are no less important or valuable than direct contributions made by the nontitled spouse to enhance the value of separate property (see, Brennan v Brennan, 103 AD2d 48, 52, supra). We can perceive of no reason why a nontitled spouse who remains at home, fulfills the responsibilities of a homemaker and cares for the couple's children while the titled spouse is actively engaged in the business world, should be treated any differently than a nontitled spouse who chooses to work outside the home and makes direct contributions to the marital enterprise. The partnership concept of equitable distribution in the full and

true sense leads to the inexorable conclusion that while the homemaking and parenting efforts of the nontitled spouse may not be directly related to the appreciation of separate property assets, these indirect contributions enable the titled spouse to engage in efforts so related *(see, Conner v Conner,* 97 AD2d 88, 99, *supra).* This reasoning is reflected by the Assembly memorandum in support of the equitable distribution bill which specifically states that the statutory provisions excepting from the definition of separate property any appreciation in value of the separate property asset which is attributable to the nontitled spouse's "contributions or efforts" reflects an understanding "that a homemaker aids in making the spouse involved in business successful by permitting him/her the freedom and assistance to devote energy to financial endeavors" *(see,* New York State Assembly Memorandum in Support of Equitable Distribution Bill, reprinted in 11C Zett-Kaufman-Kraut, NY Civ Prac, Appendix B, at App B-3; *see also,* Samuelson, *The Appreciation of Separate Assets; To Be or Not To Be Marital Property,* 17 [No. 3] Fam L Rev 1).

A cautionary word is warranted at this point to emphasize that a nontitled spouse must establish that his or her direct or indirect contributions to the marital relationship were causally related to the enhancement of the separate property asset so as to warrant an award of a percentage of the appreciation in value of the separate property asset. Thus, in *Rubin v Rubin* (105 AD2d 736, 739), this court concluded that the plaintiff wife was not entitled to share in the appreciation in value of her husband's separate property business interest in a closely held corporation since her spousal contributions during the relatively short childless marriage of seven years was limited to playing "bridge and tennis". Similarly, in *Borg v Borg* (107 AD2d 777, 778) the defendant wife's claim for a share in the appreciation of the plaintiff's separately owned printing business which occurred during the parties' six-month marriage was denied "[s]ince defendant failed to establish that the business appreciated in value due to her contribution". Finally, in *Billington v Billington* (111 AD2d 203) the defendant wife's claim for the separate asset appreciation was also denied since she failed to *allege* that said assets appreciated in value due to her contributions or efforts. A review of the aforesaid cases indicates that a finding of a causal connection between appreciation in a separate property asset and the nontitled spouse's indirect contributions as a homemaker and parent will depend on a variety of factors including the length

of the marriage, the relationship between the parties, the type of services actually performed by the nontitled spouse and the nature of the separate property.

As a corollary to the above analysis, it is significant to note that certain "passive" separate property assets appreciate in value as a result of factors which are not in any way attributable to the efforts of either spouse. For example, bank accounts, portfolio investments, unmanaged real estate holdings, works of art and the like, as a general rule, appreciate in value because of random market fluctuations rather than as a result of active management or financial contributions by either spouse. This active-passive distinction with regard to separate property assets was discussed by Justice O'Connor in *Conner v Conner* (97 AD2d 88, 99, n 4, *supra)*, in which he explained that appreciation in passive investments, such as bank accounts or securities, remains separate property whereas appreciation in an actively managed separate property asset will be deemed, in certain circumstances, to constitute marital property. Justice O'Connor explained further: "Without this active-passive management distinction, it would not be possible to characterize as marital property the appreciation of a business, owned and operated solely by the one spouse before and during marriage, which happened to be the sole object of the owner-manager's remunerative labors during marriage and the sole pecuniary support of their household" *(Conner v Conner, supra,* at p 99, n 4).

Interestingly, this active-passive distinction was recognized by the First Department in *Jolis v Jolis* (98 AD2d 692, *supra)* wherein the majority took the position that the appreciation of the defendant husband's diamond business was attributable, most significantly, to the "diamond fever" which had engulfed the marketplace during the period in question rather than to the efforts of the defendant husband.

In a more recent case, the Third Department, in *Nolan v Nolan* (107 AD2d 190, *supra)* also utilized the active-passive approach in awarding the plaintiff wife a percentage of the appreciation in her husband's business. Therein the court stated: "In general, appreciation in value of separate property which 'cannot fairly be considered as the product of the marital partnership' is excluded from equitable distribution *(Brennan v Brennan,* 103 AD2d 48, 53; *see,* Domestic Relations Law § 236 [B] [1] [d] [3]). In this case, however, defendant left a salaried position with Ashland in 1979 to devote his energies to full-time management of his securities. *The record indicates*

*that the appreciation in value of defendant's separate property was not entirely due to random market fluctuations (see, Jolis v Jolis, 98 AD2d 692, 693), but as a result of active management of his holdings (see, Conner v Conner, 97 AD2d 88, 99, n 4; Roffman v Roffman, 124 Misc 2d 636)" (Nolan v Nolan, supra, at p 193; emphasis added).*

Thus, under this analysis, passive appreciation of a separate property asset during the marital relationship would not be subject to a claim by the nontitled spouse whereas an increase in value in such asset due to the direct or indirect contributions or efforts of the nontitled spouse would be considered marital property and subject to such a claim *(see also, Roffman v Roffman, 124 Misc 2d 636, supra;* 2 Foster, Freed and Brandes, Law and the Family § 33:4-B [1], at 963 [1985 Cum Supp]).

Turning to the facts of the instant case, we conclude that plaintiff's indirect contributions as a homemaker and mother to the parties' two children over the 12-year period of the marriage warrant an award of a percentage of the appreciation, if any, of defendant's separate property interest in Unity and related companies which occurred from the inception of the parties' marriage to the date of the commencement of the instant divorce proceeding. In addition to these indirect contributions, plaintiff is entitled to be credited for the direct contributions during the marriage, however minimal, which she made to the business in the form of conferring with customers, entertaining clients and attending conventions and trade shows *(see, Wegman v Wegman, 129 Misc 2d 968, supra).* Thus, remittal is necessary to determine (1) if there was any appreciation in the value of defendant's business interest in Unity and related companies between the date of the parties' marriage and the commencement of the instant divorce proceeding and (2) the extent of such appreciation to which plaintiff is entitled by virtue of her direct and indirect contributions.

■ With respect to the remaining issues presented by the instant appeal and cross appeal, we find that the direction in the judgment that defendant continue to pay the carrying charges on the marital premises until its sale is not an open-ended obligation such as would be improper under 22 NYCRR 699.9 (f) (6), as the judgment explicitly refers to and incorporates the earlier pendente lite order of Judge Wood, dated February 26, 1981, where those specific amounts determined to constitute the carrying charges are set out. As the mone-

tary limits of defendant's obligations are thus fixed, the award was a proper exercise of discretion (cf. Belcastro v Belcastro, 104 AD2d 625).

■ However, the award of medical and dental expenses for the children is in the nature of an open-ended obligation and was improper under 22 NYCRR 699.9 (f) (6) (see, Armando v Armando, 114 AD2d 875; Troiano v Troiano, 87 AD2d 588; Di Mascio v Di Mascio, 88 AD2d 966, 967). Rather, under the circumstances of this case, we find that Special Term should have directed defendant to provide medical and dental insurance coverage for the children. It should be noted that plaintiff is not precluded from applying to either the Supreme Court or Family Court for the payment of future extraordinary expenses for the children (see, DiMascio v Di-Mascio, supra, at p 967).

■ Further, we find that under the facts of this case, particularly given defendant's age and the age of his children, Special Term erred in failing to direct defendant to obtain and keep in effect a life insurance policy for the benefit of the children. Therefore, we find it equitable that the cash surrender value of the old policy, which apparently has been allowed to lapse, be divided between the parties.

■ Finally, it was error to have awarded attorney's fees solely on the basis of the affirmations of counsel without first conducting a hearing. Where attorney's fees are challenged, the opposing spouse is entitled to a hearing, not only to examine into the financial conditions of the parties, an issue which, in this case was thoroughly examined at trial, but also as a "meaningful way of testing the [attorney's] claims relative to time and value" (see, Sadofsky v Sadofsky, 78 AD2d 520, 521; Weinberg v Weinberg, 95 AD2d 828, 829). An award of attorney's fees solely on the basis of affirmations is improper in the absence of a stipulation regarding the same (see, e.g., Sadofsky v Sadofsky, supra, at p 521; Entwistle v Entwistle, 92 AD2d 879, 880). Therefore, at the hearing to be had herein, the issue of the amount of attorney's fees to be awarded shall also be determined (see also, Price v Price, 115 AD2d — [decided herewith] [appeal from stated portions of an order and judgment dated September 15, 1983]).

MANGANO, O'CONNOR and WEINSTEIN, JJ., concur.

Judgment modified, on the law and the facts, by (1) amending subdivision (a) of paragraph "seventh" of the findings of fact by adding thereto, after the word "defendant", the follow-

ing: ", however, any appreciation in the value of the said stocks owned by defendant from the date of the marriage until the date hereof is marital property subject to equitable distribution.", (2) deleting therefrom the eleventh decretal paragraph which directed that defendant pay all of the children's uninsured medical and dental expenses, and substituting therefor a provision that defendant maintain medical and dental insurance coverage for the children; (3) deleting therefrom the thirteenth decretal paragraph which directed that defendant have the option of maintaining his present life insurance or paying to plaintiff the cash surrender value of $10,000, and substituting therefor a provision that the cash surrender value of the present policy be equally divided between the parties, and that defendant also obtain and maintain in effect an insurance policy on his life for the benefit of the children, and (4) deleting therefrom the eighteenth decretal paragraph which awarded counsel fees on the basis of the attorneys' affirmations only. As so modified, judgment affirmed insofar as appealed from, with costs to the plaintiff, and matter remitted to the Supreme Court, Rockland County, for a hearing to determine: (1) if the value of defendant's wholly owned corporations increased during the term of the marriage, and if so, what percentage of that appreciation should be awarded to plaintiff for the services that she performed as wife, homemaker and mother during that period, in addition to the value of any direct contribution that she may have made and (2) plaintiff's application for counsel fees, and for the entry of an amended judgment thereupon.