Carl A. Capasso, Respondent, v Nancy Capasso, Appellant.

First Department, October 2, 1986

APPEARANCES OF COUNSEL

*Myrna Felder* of counsel *(Raoul Lionel Felder, P. C.,* attorney), for appellant.

*Samuel G. Fredman* of counsel *(Fink, Weinberger, Fredman, Berman & Lowell, P. C.,* attorneys), for respondent.

## OPINION OF THE COURT

WALLACH, J.

Under Domestic Relations Law § 236 (B) (5) (g), the court is required to state the reasons for its decision distributing property in a matrimonial action. We hold that in the absence of unusual circumstances, a reasoned distribution can only be made in light of the total value of the property subject to distribution. Since the distribution here was made without reference to such value, we find it necessary to reverse the judgment and remand for additional findings of fact. We also hold that findings of fact submitted pursuant to CPLR 4213 (a) cannot constitute the decision of the court mandated by Domestic Relations Law § 236 (B) (5) (g).

The parties were married in March 1971, and had two children, born in 1972 and 1974. The economic cornerstone of the marriage was a construction business started by the husband virtually from scratch about three years before the parties were married, and held to be his separate property. Unless the husband is claiming that his fortune was made in real estate, it is obvious from the parties' life-style that his business was an outstanding success. In January 1983, the husband sued for divorce, and the trial came on in July 1985. The parties stipulated to liability and custody, leaving for trial only issues pertaining to property distribution. At the conclusion of the trial, which took 21 days over a period of four months, both sides submitted requests for findings that were to stand as the decision of the court. On December 10, 1985, the court signed the husband's requests exactly as submitted, together with a judgment prepared in conformity therewith; the wife's requests were rejected in toto. The wife appeals, arguing that she was not awarded an equitable share of the marital property.

The trial court awarded the wife property having a total value of approximately $2 million. She contends that this was not enough measured against marital property of between $10 million and $19 million, depending upon whether certain valuations made by the trial court are correct, and upon whether certain assets found to be the husband's separate property were properly so classified. The husband does not attempt to put a total value on the marital property, though his argument does suggest that most of the marriage's distributable wealth consisted of residential real estate worth approximately $4.6 million as of the time of trial, of which the wife received $1.7 million, or 36.5%. If true, this would be mere coincidence. The trial court's decision contains no indication that, in distributing the marital property, there was an intention to give the wife something more than one third of the value of the residential real estate.

Absent unusual circumstances making valuation unnecessary or unfeasible (see, e.g., Sementilli v Sementilli, 102 AD2d 78), we agree with the assumption underlying the wife's argument—and to a lesser extent the husband's too—that consideration of the total value of the marital property is essential to the fashioning of a plan of distribution, for it is this total, after all, which has to be apportioned. Here, no finding was made as to the total value of the marital property, and such valuations of individual assets as the trial court did make do not appear to have had any effect on the distribution. What the trial court did was to identify and value the parties' various assets, rule each to be separate or marital, and, with respect to the latter, decide in almost every instance that the wife was not entitled to a share upon the most frequently cited ground that she made no "consequential contribution" towards its acquisition. Thus, irrespective of the value assigned to a particular asset, the wife, not having contributed towards its acquisition, was denied a share.

Attempting to justify a result reached without reference to the total value of the marital property and the parties' respective interests therein, the husband reviews the circumstances of the case and of the parties as adduced at the trial, and argues that an award amounting to some $2 million was not only fair, but generous. It is, he claims, more than enough to maintain her in comfortable circumstances for the rest of her life. Perhaps so, but, given a record that does not permit us to make our own findings on all essential issues of fact, we cannot approve a result, even a seemingly fair result, fortu-

itously reached without regard for the essential facts. We cannot assume, as the husband would have us do, that the court tacitly determined the total dollar value of the wife's fair share in the total marital property to be $2 million, and then distributed the property in accordance with a plan formulated to give effect to that determination.

Given its findings, the trial court does indeed appear to have been generous to the wife. She was expressly found not to have made any direct or indirect contributions to the financial success of the marriage, and none of the other statutory factors the court must consider under Domestic Relations Law § 236 (B) (5) (d), discussed seriatim in the court's decision, was seen as operating in her favor. The major item awarded to her was a distributable award of $1.5 million, representing a one-half share in the parties' marital residence (a Fifth Avenue cooperative duplex apartment recently featured, according to the wife, in a prominent journal of architecture) valued as of the commencement of the action. No reasons are given why this asset was distributed in equal shares, let alone that it was done pursuant to a plan to give the wife $2 million, or, for that matter, a 36.5% share of the residential property. A second item awarded to the wife was a condominium apartment located in West Hampton, New York, valued at $200,000 as of the commencement of the action, and given to her apparently because, during the pendency of the action, while subject to a court order directing shared occupancy of this property on an alternate monthly basis, she rendered it useless to the husband by "stripping" and "denuding" it of its furniture each time she moved out. Upon these facts, the court concluded "that were the [husband] to be awarded an equitable distribution of said apartment or a distributable award in lieu thereof, the [wife] would render such an award a nullity." It thus appears that the wife was given this property as a reward for contemptuous conduct. The wife was also given a share of the furnishings in the Manhattan apartment, but no reasons were given why these were divided in the manner in which they were, thus leaving it open to the wife to argue, as she does on appeal, that the more cherished and valuable items were all given to the husband. Finally, the wife was credited with several other items, including bank and brokerage accounts totaling $130,000, for no apparent reason other than her control over them as of the commencement of the action. So, too, the husband was credited with the bank and brokerage accounts

that were under his control, though here no findings were made as to the balances in the accounts. Perhaps the court determined that the self-help division by the parties of their liquid assets was for the most part a wash, but this is only speculation.

Domestic Relations Law § 236 (B) (5) (g) requires the trial court to set forth the factors it considers and the reasons for its decision. The requirement is mandatory and cannot be waived. An insufficient explanation for the court's distribution of property requires reversal of the judgment and remand for further consideration (*Levine v Levine,* 102 AD2d 799; *Hornbeck v Hornbeck,* 99 AD2d 851; *Wilson v Wilson,* 101 AD2d 536, 538-539).

As limited by her main brief, the wife challenges the trial court's findings on valuation with respect to the Long Island City commercial properties; the house at 37 Exchange Place, West Hampton Beach, New York; the Quogue property located on Beach Lane and South Dune Road and acquired on April 5, 1982; the apartment located on Fifth Avenue, New York; and the appreciation in the value of the husband's business.

With respect to the Long Island City commercial properties, we reverse the trial court's valuation of $268,000 as of the commencement of the action, and make our own finding that their value as of the commencement of the action was $4,462,-119. We do this on the basis of the husband's admissions. On December 16, 1982, in connection with a loan application, the husband represented to a bank that the Long Island City properties had a "recent appraised value" of $4,920,000 as of August 31, 1982, and were encumbered with mortgages totaling $500,000, for a net value of $4,420,000. And, in an affidavit sworn to May 17, 1983, in connection with a motion by the wife for temporary maintenance, the husband, while not attesting to the fair market value of these properties, did represent that the mortgage balances had been reduced to $457,881 as of December 31, 1982. Assuming in the husband's favor, as the wife does on appeal, that the properties did not increase in value between September 1982 and January 1983, the net value of these properties as of year-end 1982, just prior to the commencement of the action, was admitted by the husband to be $4,462,119. We find this to be a fact absent an explanation in the record why the husband should not be bound by these statements. His argument on appeal attacks only the credibility of an expert he himself hired to appraise the properties some three years prior to the commencement of

the action for purposes of dealings he was then having with a bank. Nowhere does he address the statements he made in the 1982 loan application; nor does he point to any credible evidence in the record supportive of the trial court's valuation. Concededly, it was not until some months after the commencement of the action that the large mortgages presently encumbering these properties were taken out by the husband.

With respect to the other items of property mentioned above, the trial court's findings on valuation are insufficient as a matter of law, and, on remand, it is directed to make further findings of fact pertinent thereto. In valuing property, it is not enough that the court's decision merely fix value without making further findings as will show how the value fixed was ascertained (see, Rosen Trust v Rosen, 53 AD2d 342, 361-362, cited with approval by the Court of Appeals in Matter of Jose L. I., 46 NY2d 1024). No less than in a contract action, where it is necessary to assess damages (see, e.g., Mason v Lory Dress Co., 277 App Div 660; Kundla v Symans, 9 AD2d 1021; General Instrument Corp. v Consolidated Edison Co., 99 AD2d 460), or in a condemnation proceeding, where it is necessary to assess the value of real property (see, e.g., Lord v State of New York, 48 NY2d 711, 713; Conklin v State of New York, 22 AD2d 481; Matter of Incorporated Vil. of Babylon [Honsberger], 36 AD2d 768), effective appellate review in an equitable distribution action cannot be had on valuations amounting to nothing more than mere conclusions. The factual issues going to valuation in this case are not so simple that a decision merely stating value establishes by necessary inference the essential facts found (see, Mason v Lory Dress Co., supra, at p 664). To simply accept, as the trial court did in one instance, the conclusion of a valuation witness because his testimony was "presented in the form of facts and figures", while rejecting that of another because his was presented "in a conclusory fashion without * * * any actual analysis of the facts and figures", is not to state the facts and figures deemed essential by the trial court in reckoning valuation. Similarly, without indicating how and to what extent the facts in issue turn on credibility, it does not suffice simply to accept the conclusion of an appraiser called by one side because of bias, unimpressive credentials, or other discrediting circumstance affecting the weight of the testimony offered by an appraiser called by the other side.

We also find that the trial court committed error in not

giving the wife any credit for the appreciation in the value of the husband's business. There is nothing in the record to indicate that the wife was anything but a dutiful and loyal spouse, supportive of her husband in his business pursuits. Indeed, there is much to sustain a finding that she took an active and direct interest in his business affairs and success. Among other things, she was an officer of Nanco Contracting Corp., the entity through which the husband conducted the major part of his business activities; she coguaranteed with her husband loans taken out by Nanco; she kept records of certain of Nanco's transactions, and had some direct dealings with its accountants; she picked up bids, and, as the husband puts it, ran errands and did "favors" for him; she entertained and attended social functions in furtherance of the husband's business interests. None of this was found by the trial court to "rise to the level of active, meaningful involvement in this business enterprise", but, no matter how minimal, these contributions were not totally devoid of value, and some recompense should have been given on their account *(Price v Price,* 113 AD2d 299, 308).

The trial court also found "that the [wife] made no significant contribution as a spouse, parent, wage earner and homemaker to the career or career potential of the [husband]." In so finding, the central premise of the Equitable Distribution Law was overlooked. Marriage is an economic partnership *(O'Brien v O'Brien,* 66 NY2d 576, 585) with a significant noneconomic component *(see, Price v Price, supra,* at pp 302-308). " 'The nonremunerated efforts of raising children, making a home, performing a myriad of personal services and providing physical and emotional support are, among other noneconomic ingredients of the marital relationship, at least as essential to its nature and maintenance as are the economic factors, and their worth is consequently entitled to substantial recognition' " *(Price v Price, supra,* at p 304, quoting *Wood v Wood,* 119 Misc 2d 1076, 1079; *see also, O'Brien v O'Brien, supra,* at p 587, citing *Wood v Wood* with approval). Here, at the very least, the wife bore two children, contributed towards the maintenance of a home, and was, as noted, a supportive and dutiful spouse. These spousal and homemaker services aided the husband in his business pursuits, and, as a matter of law, should have been given some measure of recognition in determining, among other things, the equities relative to the appreciation in the value of the husband's business, separate property though it might be

*(Price v Price, supra).* Perhaps the trial court was unduly influenced by a perspective which led it to characterize this marriage of almost 12 years, which produced two children and considerable wealth, as one of "relatively short duration" *(cf. Zuch v Zuch,* 117 AD2d 397, 403).

We also find an error of law in the trial court's wholesale, verbatim adoption of the husband's requests for findings. At least insofar as they bear on property distribution, these proposals were unacceptable and should have been rejected across the board. Under CPLR 4213 (a), the parties have a right to submit requests for findings of fact in a case tried by the court without a jury. The purpose of such submissions is to assist the court in meeting its obligation under CPLR 4213 (b) to state the facts essential to its decision. It is not their purpose to review the evidence, or offer argument justifying a particular finding or exercise of discretion. This is more appropriately left to legal memoranda not normally made part of the record. Neither evidence, argument nor comment has any legitimate place in proposed findings of fact *(Glacius v Black,* 50 NY 145, 147; *see also, Metropolitan Life Ins. Co. v Union Trust Co.,* 268 App Div 474, 478-479, *affd* 294 NY 254), each of which " 'should be plainly stated in a single proposition, the whole of which can be granted or refused' " *(Steubing v New York El. R.R.,* 138 NY 658, 661; *see,* 8 Carmody-Wait 2d, NY Prac, § 60:11). Properly presented, requests for findings do not allow for argument *(Ryan & Son v Lancaster Homes,* 22 AD2d 186, 192, *affd* 15 NY2d 812).

As noted, under CPLR 4213 (b), a court trying a case without a jury is required to render a decision which, at a minimum, states the facts deemed essential. The Domestic Relations Law, however, at least for purposes of equitable distribution, requires more—in addition, the court must "set forth the factors it considered and the reasons for its decision" (Domestic Relations Law § 236 [B] [5] [g]). For the reasons stated, these cannot be proposed to the court by way of requests for findings of fact. It is the responsibility of the court, not the parties, to review, analyze and weigh the evidence, separate the significant from the insignificant, and reach a reasoned result. Whatever the common practice might be in other cases, and mindful as we are of the burdens already placed on our busy trial parts, in an equitable distribution action we cannot, in view of this express statutory mandate, condone relegation of the court's decision to the parties *(see, O'Sullivan v O'Sullivan,* 94 AD2d 407, 409).

The findings of fact adopted by the trial court are essentially discursive in style, although the enumeration of paragraphs initially conveys the impression that each states only a single proposition. In fact, many of the paragraphs bearing on financial matters run on for well over a page, and most put forward divers propositions that are sometimes disparate and unrelated in subject matter. Throughout, reviewing and commenting upon the evidence, assessing the credibility of witnesses, and purporting, but failing, to explain the distribution, the most salient characteristic of these lawyer prepared findings is their argumentative and censorious tone. They have not assisted a review of the facts.

We make no other findings of fact or conclusions of law, preferring instead to hold further review in abeyance pending receipt of appropriate findings of fact and a decision.

We do take note, however, of the court's award of title to the Fifth Avenue apartment, the parties' principal marital residence, to the husband. The wife was held entitled to an equal share, but, in lieu thereof, was given a distributable award of $1.5 million. This represented one half of the value of the apartment measured as of the commencement of the action, not the trial, by which time, according to the wife, it had appreciated to $6 million. Valuation was made as of the commencement of the action because the wife, while enjoying exclusive occupancy of the apartment during the pendency of the action, "wholly and totally failed to contribute in any meaningful economic fashion to the maintenance and retention of said apartment as an asset of the parties", the husband having "exclusively shouldered the economic burden." Thus, it was the trial court's purpose to deny the wife a share in the appreciation realized during the pendency of the action, and this is accomplished by giving title to the husband and a distributable award to the wife, with value measured, for purposes of the distributable award, as of the commencement of the action. Such an approach overlooked the fact that the husband's maintenance of the wife's exclusive occupancy of the apartment during the pendency of the action was court ordered. If the trial court was of the opinion that the husband should be credited with all or part of his temporary maintenance payments, the decision should have plainly so stated. We would also note that an equity of this type could have been more fairly factored in through a straight dollar offset. We see no reason why the trial court, having decided that custodial considerations did not require continued occupancy

of the apartment by either party, and having further decided that the wife was entitled to an equal share, should not have ordered a sale of this asset, with such adjustments to be made in the division of the sales proceeds as might be warranted by the equities of the case and the court's plan of distribution (see, *Rubin v Rubin,* 105 AD2d 736, 740; *Cohen v Cohen,* 104 AD2d 841, 844; *Adkins v Adkins,* 104 AD2d 431; *Ripp v Ripp,* 38 AD2d 65, 69-70, *affd* 32 NY2d 755).

Also noted is a provision in the judgment making the parties equally responsible for the taxes, interest and penalties to be assessed in the event certain tax shelters, used in the past but now being questioned by the taxing authorities, are disallowed. Here the court reasoned that since the parties filed joint tax returns, the tax savings realized from the shelters inured to their mutual and equal benefit. According to the court, "[i]t was as a result of these tax sheltered investments that the parties were able to accumulate the assets which are being equitably distributed herein and to live at the standard which it appeared they maintained during their married life when they were living together." Doubtless it is true that while the marriage endured, the wife enjoyed some, if not all, of the property acquired with these tax savings, but now the bulk of that property is being distributed to the husband, or so it would appear from the decision. Again, some consideration should have been given to the parties' relative shares in the total marital estate. In addition, the degree to which the wife participated in the investment decisions that now expose her to this liability may be of some significance. A simple indemnification provision would serve to give recognition to these equities should the law make the wife jointly liable with the husband on this potential liability.

Accordingly, the judgment of the Supreme Court, New York County (Andrew R. Tyler, J.), entered December 18, 1985, which, *inter alia,* distributed the parties' property, is reversed, without costs, on the law and the facts, insofar as it distributed the parties' property, new findings are made as to the value of the Long Island City properties as of the commencement of the action, and as to the effect of defendant's direct and indirect contributions on the appreciation in the value of plaintiff's business, and the action is remitted for additional new findings of fact and a decision, pending which the appeal is held in abeyance.

FEIN, J. P., MILONAS and ROSENBERGER, JJ., concur.

Judgment, Supreme Court, New York County, entered on December 18, 1985, unanimously reversed, on the law and the facts, without costs and without disbursements, insofar as it distributed the parties' property, new findings are made as to the value of the Long Island City properties as of the commencement of the action, and as to the effect of defendant's direct and indirect contributions on the appreciation in the value of plaintiff's business, and the action is remitted for additional new findings of fact and a decision, pending which the determination of the remainder of the appeal is held in abeyance.